J. HEWITT MORGAN et al., as Trustees under the Will of DAVID P. MORGAN, Deceased, Appellants, *v.* UNITED STATES MORTGAGE AND TRUST COMPANY, Respondent.

Banking — duty of depositors to examine their pass books when balanced and compare them with the vouchers — payment of forged checks by bank — when depositor cannot recover the amount paid on forged checks.

1. Primarily a bank may pay and charge to its depositor only such sums as are duly authorized by the latter, and of course a forged check is not authority for such payment. It is, however, permitted to a bank to escape liability for repayment of amounts paid out on forged checks by establishing that the depositor has been guilty of negligence which contributed to such payments and that it has been free from any negligence.

2. A depositor who sends his pass book to be written up and receives it back with his paid checks as vouchers, is bound, under certain circumstances, to examine the pass book and vouchers and to report to the bank without unreasonable delay any errors which may be discovered.

3. The trustees of an estate had a deposit account with a bank and checks drawn thereon were signed by a rubber stamp imprinting the name of the estate, authenticated by the actual signature of either trustee. The trustees had a clerk who was their agent in dealing with the bank. He made deposits, filled out the body of the checks and obtained from the bank the pass book and vouchers and accompanying check list whenever the account was balanced. During a period of about a year he forged a number of checks aggregating a large sum and employed in his forgeries the rubber stamp

with the simulated signature of one of the trustees in authentication thereof. Whenever the account was balanced the clerk withdrew from the vouchers and destroyed the checks forged by him and also the check list, and after as long a delay as convenient delivered the pass book and the genuine vouchers to the trustees, who knew that the pass book was balanced frequently and returned with the paid checks as vouchers and with a detailed list thereof. The trustees also had a journal and ledger account with the bank, kept by the same clerk, and a check book, upon the stubs of which were entered the genuine checks presented to and paid by the bank. The trustee who examined the pass book and vouchers never asked for the check list, which he knew was returned with the vouchers, and which would have shown the payment of the forged checks. He did not examine the balances shown by the pass book which were struck after the payment of the forged checks, but contented himself with a comparison of the genuine checks with the check book and with the books of the estate, which comparison disclosed no signs of the forgeries. The bank also paid interest on the account, and an examination of the pass book would have shown that the amount of interest credited thereon was much less than that on the books of the estate and less than would have appeared except for the payment of the forged checks. *Held*, that the trustees, by their own negligence in failing to properly examine the pass book and vouchers, contributed to the payment of the forged checks, and that the bank was not guilty of negligence, and hence plaintiffs cannot recover from the bank the amount paid on the forged checks. *Morgan* v. *U. S. Mortgage & Trust Co.*, 151 App. Div. 898, affirmed.

(Argued April 2, 1913; decided April 22, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 15, 1912, affirming a judgment in favor of defendant entered upon a verdict directed by the court, save as to one point mentioned in the opinion.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George M. Mackellar* and *Martin A. Schenck* for appellants. The question of plaintiffs' negligence in the examination of their accounts was for the jury. (*Weis-*

*ser* v. *Denison*, 10 N. Y. 68; *Critten* v. *Chemical Bank*, 171 N. Y. 219; *Frank* v. *Chemical Nat. Bank*, 84 N. Y. 209; *Clark* v. *Nat. S. & L. Bank*, 32 App. Div. 316; 164 N. Y. 498; *Wilmerding* v. *P. Tel. Cable Co.*, 118 App. Div. 685.) Defendant's negligence presented a question of fact for the jury. (*Kelly* v. *Buffalo Sav. Bank*, 180 N. Y. 171; *Squire* v. *Ordemann*, 194 N. Y. 394; *Parks* v. *K. T. Co.*, 137 App. Div. 719; *N. W. Co.* v. *Pacific Bank*, 141 App. Div. 265.)

*Julien T. Davies, Jr.*, for respondent. The facts being undisputed, it was a question for the court to determine whether such examinations as the appellants had made of their returned checks and account on the occasions when the pass book was balanced were sufficient to discharge the duty which they owed the bank. (*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219; *Leather Mfrs. Bank* v. *Morgan*, 117 U. S. 96; *Hardy & Bros.* v. *Chesapeake Bank*, 51 Md. 562.) Plaintiffs failed to exercise reasonable care in verifying their account with defendant. (*Myers* v. *S. W. Nat. Bank*, 193 Penn. St. 1; *First Nat. Bank* v. *Allen*, 100 Ala. 476.) No negligence on the part of defendant can be predicated upon the mere payment of the first four forged checks. (*Myers* v. *S. W. Nat. Bank*, 193 Penn. St. 1.) There was no element of negligence in defendant's treatment of this account. (*Crawford* v. *W. S. Bank*, 100 N. Y. 50.) ·

HISCOCK, J. The important question presented on this appeal concerns the obligation of a depositor in a bank to examine his pass book and returned vouchers as a protection against the payment by the bank of forged checks.

The action was brought to recover a large amount paid by the respondent on a series of forged checks drawn in the name of appellants and charged to their account. The forgeries were conceded but the respondent defended against the repayment of the amounts by it paid out on said checks, with the exception of four subject to special

consideration, on the ground that appellants had contributed to such payment by their negligence in not examining their pass book and vouchers, and that it had not been guilty of any negligence in paying the checks. The court ruled with the respondent on this defense as matter of law and refused to submit either proposition thus stated to the jury.

The important facts which gave rise to the controversy are as follows:

Prior to May 18, 1904, the appellants had opened and maintained with the respondent a deposit account with considerable credit balances. Checks drawn on this account were signed by means of a rubber stamp imprinting the words "Estate of David P. Morgan," and authenticated by the actual signature of either trustee. The appellants had in their employ a trusted clerk who was their immediate agent in dealing with the bank. He made deposits, filled out the body of checks and obtained from the bank the pass book and vouchers and check list whenever the account was balanced. Between May 18, 1904, and May 20, 1905, he forged twenty-eight checks aggregating a large sum and employing in his forgeries the simulated signature of the trustee Morgan.

These checks were paid by the bank and together with the genuine ones drawn during the same period were charged to the appellants on the books of the bank. Five times during the period the formers' pass book was written up and balanced and on each occasion the checks paid by the bank since the last balancing, together with an itemized statement or list thereof and the pass book were returned to appellants by delivery to their agent Hennessey. The latter withdrew from the bundle of vouchers and destroyed the checks forged by him and also the check list and then, after delaying as long as convenient, delivered the pass book and the genuine vouchers to Kissell who understood that the rules of respondent required that the pass book should be balanced every month or two

months and that, after balancing, it was returned with the paid checks as vouchers, and with a detailed list thereof.

The estate through Hennessey as its bookkeeper kept a journal and ledger containing an account with the bank and from which there were drawn off once or twice during the period in question trial balances. It also had a regular check book upon the stubs of which were entered the genuine checks presented to and paid by the bank. Kissell, who seems to have been the more active trustee, never asked for the check list which he knew was returned by the bank when the pass book was balanced up and never examined the balances shown by the pass book and which were struck after payment of the forged checks. He contented himself during the period in question with comparing the genuine vouchers permitted by Hennessey to come into his hands with the check book and with the other books of the estate, and which comparison of course disclosed no signs of Hennessey's forgeries. The other trustee in whatever examinations he made never examined the pass book or the check list.

On opening their account the appellants had arranged for the payment of interest thereon at a considerable rate and the amount of this interest as credited on the pass book indicated much smaller balances than appeared on the books of the estate or than would have appeared on the pass book except for payment of the forged checks.

The general rule of law is that a bank may pay and charge to its depositor only such sums as are duly authorized by the latter, and of course a forged check is not authority for such payment. It is, however, permitted to a bank to escape liability for repayment of amounts paid out on forged checks by establishing that the depositor has been guilty of negligence which contributed to such payments and that it has been free from any negligence. That is the nature of the defense urged in this case.

I shall not consider in detail the evidence by which is to be decided the appellants' claim that the bank itself was negligent. Several reasons are assigned why the question of its negligence at least should have been submitted to the jury. These assignments of negligence involve a consideration of the particular facts disclosed in this case rather than a controversy concerning any principles of law, and I shall, therefore, content myself with simply stating that after an examination of all of the evidence we do not think that there was any which would have justified the jury in deciding that the respondent was negligent in paying the forged checks which are in dispute. It conceded its liability on the checks which were paid by it before and at the date when the pass book was first balanced and returned to the appellants and the jury determined on a special submission of that particular question that the time which elapsed between the return of this pass book and the payment of the next check thereafter was of sufficient length to give the appellants a reasonable opportunity for an examination and ascertainment of the condition of the account which disclosed the payment of the forged checks.

There then remains the single question already outlined and which will be discussed, whether the appellants were guilty of negligence after the lapse of a reasonable time in not examining their pass book and list of vouchers and ascertaining what they were being charged with and thus discovering the existence of the forged checks. It will be remembered that on five occasions when their account was written up all they did was to compare the genuine vouchers which their dishonest clerk permitted to reach their hands with their check book and ledger and that they did not ask for the check list which itemized all paid checks, both genuine and forged, or examine the pass book which showed balances after deducting forged checks.

It is well established that appellants owed the duty of

making some examination and verification of their account with the bank when the pass book and vouchers were returned. This is conceded by them, but they insist that this duty was fully discharged by comparing with the check book the genuine vouchers which Hennessey allowed to reach them. The record before us, however, discloses how incomplete and ineffective this examination was even as against the primitive methods which Hennessey employed to prevent detection of his wrongdoing by suppression and destruction of the forged vouchers and check list. On the other hand, if they had examined the check list and pass book, and if necessary compared them with their own books, they would have discovered at once the payment and debit to their account of checks which they had not drawn and the forgeries would have been uncovered. There is no question about that of course. The only question is whether a jury would have been permitted to say that they were free from negligence when they closed their eyes or turned them away from these certain means of detection of their own agent's wrongdoing which were furnished to them for that very purpose by the bank. I do not think it would have been permitted to so determine. Negligence in this case means the neglect to do those things dictated by ordinary business customs and prudence and fair dealing toward the bank, which if done would have prevented the wrongdoing which resulted from their omission. We may take notice of the custom practically universal amongst banks at frequent intervals to write up and balance the pass books of their customers and return them with paid checks or other instruments as vouchers for the payments made and charged to the depositor. The appellants were business men and fully understood this. They apparently knew the rule of the bank requiring accounts to be written up every month or two, and they knew that there were returned with the pass book not only the vouchers but an itemized list thereof as debited to the

account.   When they submitted their pass book to be thus written up they in effect called for a statement of their account as kept by the bank, and when this was furnished to them is it to be thought that they satisfied the requirements of common prudence and fairness to the bank by absolutely disregarding the pass book and check list which could not be easily falsified and simply comparing a bundle of vouchers which might be much more easily manipulated by ready abstraction of vouchers? The pass book is the statement of the bank's version of the account and the fundamental basis for comparison with the depositor's own records.   The paid checks which are returned are the vouchers of the bank for its account as written on the pass book, and if they are to be made the medium of comparison of accounts the depositor at least ought to endeavor to know that they tally with the pass book.   Otherwise he has made no reliable comparison or verification.   Therefore, it seems to me, that when the appellants relied for verification merely on a comparison of vouchers without any effort to verify these by comparison with the check list or pass book they did not exercise reasonable methods.   On the other hand, it seems to me, that when, having obtained from the bank a list of vouchers and balanced pass book which were intended to give and did give them a correct basis for comparison and verification, they disregarded these, they were guilty of such obvious oblivion of their duties that no extended argument can make plainer their negligence than does the mere recital of the facts.

The authorities which have been called to our attention do not establish anything in opposition to these views, but the later ones tend to sustain them.

It is true that in *Weisser's Admrs.* v. *Denison* (10 N. Y. 68) some things were said by the judges who wrote which question the doctrine that a depositor owes any duty to a bank to examine his pass book or vouchers with a view to the detection of forgeries, but the decision itself is only

authority for the proposition that the bank was not relieved from liability for forged checks which had been paid before the account was balanced by the failure of the depositor to subsequently discover the forgeries.

In *Frank* v. *Chemical National Bank of N. Y.* (84 N. Y. 209) the court had before it for consideration the payment by the defendant of forged checks. The plaintiffs on each occasion after the pass book had been written up and the vouchers returned made an examination of the account by comparing the checks returned to them with the memorandum of checks in the margin of the check book, and the balance in the pass book with the balance appearing in the check book, and on each occasion they were found to correspond. One of the plaintiffs then compared the checks with entries in the pass book by having the dishonest clerk who had committed the forgeries read the entries while he had the checks, and no discrepancy appearing the account was deemed to be correct and was not further examined. It appeared that the clerk by abstraction of forged vouchers and by false balances and readings deceived the plaintiffs and prevented them from ascertaining by means of the examination thus conducted the true state of the account and the fact of the forgeries. But it will be noticed that the plaintiffs did precisely what the appellants in this case failed to do when they compared their pass book as written up by the bank with their own books and that they were deceived by the false balances which their clerk had placed upon their own books. The court, while recognizing fully the obligation resting upon the depositor to make some examination of his account with the bank when made up, held that he was under no duty to so conduct the examination that it would of inevitable necessity lead to the discovery of the fraud; that he was only bound to use reasonable diligence, and that on the facts as developed in that case such diligence by the depositor was established.

In *Critten* v. *Chemical National Bank* (171 N. Y. 219,

230) the court had before it a case of payment by the bank of checks which had been raised. It appeared that a comparison of the returned vouchers with the check stubs would have exposed the alterations in the checks and as it was not necessary to examine the pass book to accomplish such detection, that phase of a depositor's obligation was not discussed. The failure to detect the alteration was due to the fact that the verification of the account was as a rule intrusted to the dishonest clerk who had raised the checks. The court in the opinion written by Judge CULLEN reaffirmed the general rule laid down in the *Frank* case, of an obligation on the part of the depositor to examine his account and vouchers, and in reaching the conclusion that the plaintiffs were chargeable with knowledge of the fraudulent alterations which would have been disclosed by an honest comparison of the vouchers which were returned with the check book, said: " It is clear, therefore, that at all times a comparison of the returned checks with the stubs in the check books would have exposed the alterations made in the checks. Of course, the knowledge of the forgeries that Davis possessed, from the fact that he himself was the forger, was in no respect to be attributed to the plaintiffs. But we see no reason why they were not chargeable with such information as a comparison of the checks with the check book would have imparted to an innocent party previously unaware of the forgeries. The plaintiffs' position may be no worse because they intrusted the examination to Davis instead of to a third person; but they can be no better off on that account. If they would have been chargeable with the negligence or failure of another clerk in the verification of the accounts, they must be equally so for the default of Davis, so far as the examination itself would have disclosed the facts. We think it plain, therefore, that the finding of the referee that the plaintiffs were not negligent in the examination of the pass book and vouchers is without evidence to sustain

it, unless the plaintiffs discharged their duty to the defendant when they committed the examination to a proper clerk and were not responsible for the manner in which the clerk performed the task. From the language of the report of the learned referee it would seem as if this last were the theory on which his decision proceeded. We do not think it can be sustained."

In addition to these decisions of our own court, it was distinctly held in *Myers* v. *S. W. Nat. Bank* (193 Penn. St. 1) and in *Leather Manufacturers' Bank* v. *Morgan* (117 U. S. 96), that the depositor who sends his pass book to be written up and receives it back with his paid checks as vouchers, is bound to examine the pass book and vouchers and to report to the bank without unreasonable delay any errors which may be discovered. These decisions, it seems to me, sustain the conclusion that the appellants were remiss in their obligations, and that the judgment appealed from should be affirmed, and which course I recommend.

CULLEN, Ch. J., WILLARD BARTLETT, CHASE, CUDDEBACK, HOGAN and MILLER, JJ., concur.

Judgment affirmed, with costs.