NATIONAL PRODUCTION CO. *v.* GUARDIAN NATIONAL
BANK OF COMMERCE OF DETROIT.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

   On appeal from judgment on directed verdict for defendant,
   testimony must be considered most favorably to plaintiff for
   the direction of a verdict for defendant is warranted only if,
   as a matter of law, plaintiff may not recover.

2. BANKS AND BANKING—DEPOSITOR'S NOTICE OF FRAUD TO BANK—
   ESTOPPEL—NEGLIGENCE.

   In action by corporation against banks to recover money paid
   to plaintiff's onetime treasurer on checks cashed and proceeds
   misappropriated by him in 1928 and 1929, plaintiff, whose
   books were audited and defalcations discovered in 1930 but
   which did not notify bank of same until October, 1932, *held,*
   estopped to recover from banks by its failure to give them
   notice of alleged fraud within a reasonable time of knowledge
   thereof, especially where the treasurer was rendered finan-
   cially irresponsible by surrendering a large amount of property
   to plaintiff prior to receipt of notice by the banks, even
   though it is conceded banks were negligent in cashing such
   checks under the circumstances.

Appeal from Wayne; Golden (Clayton C.), J., pre-
siding. Submitted June 23, 1937. (Docket No. 10,
Calendar No. 39,366.) Decided September 1, 1937.
Rehearing denied October 13, 1937.

Assumpsit by National Production Company, a
Michigan corporation, as assignee of National Pro-
duction Company, a former Michigan corporation,
and others against Guardian National Bank of Com-
merce of Detroit and First National Bank-Detroit,
Federal banking corporations, for money paid to
others without authorization. Directed verdict and

judgment for defendants. Plaintiffs appeal. Affirmed.

*Lucking, Van Auken & Sprague,* for plaintiffs.

*Hill, Hamblen, Essery & Lewis (William H. Granse,* of counsel), for defendant Guardian National Bank of Commerce of Detroit.

*Robert S. Marx, Carl Runge* and *Henry F. Massnick,* for defendant First National Bank-Detroit.

POTTER, J.  Plaintiff sued defendants in assumpsit, demanding judgment against each of them in the sum of $100,000, with interest. From judgment on a verdict for defendants directed by the court, plaintiff appeals.

Leonard A. Quart became associated with the National Production Company, a Michigan corporation, in 1919. The National Production Company was engaged in the manufacture of tools and dies in Detroit, and Quart was secretary-treasurer, office manager and sales manager and handled the financial business and affairs of the company, signed its checks, made its deposits in the bank and had charge of such books and records as the company kept. Paul P. Barker owned 615 shares of the capital stock and 21 shares of stock were issued and outstanding in the name of Quart. A resolution passed September 4, 1928, gave Quart 100 additional shares of stock as payment for his faithful services to the company. Subsequent company statements and reports indicate Quart was thereafter treated as the owner of 125 shares of stock. The company had about 50 accounts. The principal ones were with Ford Motor Company, Chrysler Motor Company, Graham-Paige Motor Car Company, Chevrolet, Packard Motor Car

Company and Dodge Brothers. The company's business prospered and in 1926 it erected a modern manufacturing plant and put it in operation. The records of the company consisted largely of payroll sheets, invoices of goods purchased and copies of invoices of goods sold. The accounts of the National Production Company were not audited until 1930, and at least during 1928 and 1929 it never checked its bank statements. Quart, who was in charge of the accounting, made duplicate deposit slips of deposits in the bank.

The company made money. No dividends were declared. The proceeds were split between Barker and Quart. Between October 6, 1928, and February 15, 1929, to illustrate, Barker withdrew from the company $97,237.27 and Quart withdrew from the company $57,353.32.

The company permitted its corporate charter to expire and did business as a partnership. Barker and Quart called themselves copartners and made statements as a copartnership to the bank, and as copartners did business as the National Production Company.

In 1928, Barker and Quart concluded to "take a fling" in the stock market and Quart drew a check on the company account for $10,000 to W. E. Hutton & Company, stockbrokers, and opened an account in his own name. There was another account opened with Otis & Company. It apparently was an unpropitious time to gamble in the stock market and Quart succeeded in losing a substantial sum of money within a short time. November 23, 1928, both brokers' accounts being short, Quart purchased two checks, one payable to W. E. Hutton & Company for $22,000 and one payable to Otis & Company for $22,000. He purchased these checks by taking that of the Ford

Motor Company, payable to the National Production Company, in the sum of $49,737.34, which check was indorsed by Quart, "National Production Company, L. A. Quart, Treas." $5,737.34, the balance, was deposited to the credit of the company in the Peninsular State Bank.   October 24, 1929, the accounts with the brokers being again short, and the National Production Company having a check of $35,236.53, Quart indorsed this check as before and with the proceeds bought two checks of $10,000 each, one to Hutton & Company and the other to Otis & Company, and the balance of this check in the sum of $15,236.53 was deposited to the credit of the National Production Company in the Peninsular State Bank.

It is claimed by plaintiff Quart's speculations in the stock market were made without its knowledge, consent and approval.   All of the alleged irregularities on the part of Quart were discovered in the summer of 1930.   It was not until October 6, 1932, plaintiff notified the First Wayne National Bank, assignee of the Peninsular State Bank, of Detroit, which had cashed the checks on Quart's indorsement, of the irregularities in connection with the deposits in the commercial account of the National Production Company, or called its attention to the handling of the Ford Motor Company checks above referred to.   It then presented a claim against the bank for approximately $115,000.   This claim was not paid and plaintiff instituted suit.

A multiplicity of questions of practice and procedure and of substantive law are raised in the voluminous record and exhaustive briefs of counsel and on oral argument.

If plaintiff had a right to go to the jury, the trial court was wrong.   In considering the testimony, it

must be considered most favorably to plaintiff, for the direction of a verdict is warranted only if, as a matter of law, plaintiff may not recover. Appellant says 10 questions are involved, and appellees present 11 other questions which they say are involved. In the disposition of this case, we may concede that Quart wrongfully indorsed the checks in question belonging to plaintiff and misappropriated a part of the proceeds thereof, and that the bank was negligent in cashing such checks under the circumstances and was liable for the proceeds thereof. Still, plaintiff cannot recover, and equitably ought not to recover. The checks were cashed in 1928 and 1929. In 1930, an audit of the books of the National Production Company was had and the alleged misappropriations of Quart discovered. Had the bank been properly notified that plaintiff intended to seek to hold it liable, it might have saved itself from serious loss. But the bank was not notified until 1932, and in the meantime plaintiff had recovered from Quart a large amount of property and Quart had, by surrendering such property to plaintiff, thereby rendered himself financially irresponsible. Notice to the bank must have been given without unreasonable delay after knowledge of Quart's defalcations. This was not done. Plaintiff could have spoken, it was its duty to speak, and it failed to speak. Plaintiff endeavored to collect, and did collect, from Quart a considerable portion of the amount claimed by plaintiff to have been misappropriated by him. As said in *Brown* v. *People's National Bank,* 170 Mich. 416, 425 (40 L. R. A. [N. S.] 657):

"We are agreed that an equitable estoppel arises in this case by reason of plaintiff's failure to give notice of the fraud to defendant within a reasonable time after it was known to her, or to her authorized

agent; and therefore the loss must remain where the chance of business has placed it."

So, in this case, we are agreed plaintiff is estopped by reason of its failure to give notice of Quart's alleged fraud to the bank within a reasonable time after it was known to it; and, therefore, the loss which plaintiff suffered, if any, must remain where the chance of business has placed it. We express no opinion upon the other questions raised.

Judgment of the trial court is affirmed, with costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSH-NELL, SHARPE, and CHANDLER, JJ., concurred.