## ATLAS METAL WORKS v. REPUBLIC NAT. BANK.

### No. 14575.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 19, 1943.

Rehearing Denied Dec. 17, 1943.

Scurry & Scurry, of Dallas, for appellant.

Eugene DeBogory, of Dallas, for appellee.

McDONALD, Chief Justice.

Appellant was plaintiff, and appellee was defendant, in the court below. Plaintiff was a depositor in defendant's bank. From June, 1940, until June, 1941, one of plaintiff's employees, C. B. Kimery, forged checks drawn upon plaintiff's account in the bank in the total amount of $5,213.57. Plaintiff brought this suit to recover such sum from said bank. The case was submitted to the jury upon special issues. The findings of the jury are in substance: (1) The bank was negligent in failing to discover the forged signatures. (2) Such negligence was a proximate cause of plaintiff's loss. (3 and 4) Issues and answers not material to any issue made on appeal. (5) Plaintiff assigned solely to Kimery the duty to examine the canceled checks and reconcile the monthly statements received by plaintiff from the bank. (6) Plaintiff failed to examine the canceled checks returned by defendant on July 1, 1940, and each succeeding month thereafter, within a reasonable time. (6a) Such failure to examine the returned checks was negligence. (7) Such negligence was a proxi-mate cause of plaintiff's loss subsequent thereto. (8 and 9) Issues and answers not material to any issue made on appeal. (10) After the return of the June, 1940, statement and each month thereafter, plaintiff failed to discover within a reasonable time the deposits credited to plaintiff on the monthly statements which were not shown on plaintiff's books. (10a) Such failure was negligence. (11) Such negligence was a proximate cause of plaintiff's losses occurring subsequently thereto.

Plaintiff employed Kimery in January of 1940 to serve as an assistant bookkeeper. In June of 1940 plaintiff assigned to him the additional duty of examining the canceled checks returned by the bank, and of reconciling the monthly bank statements with plaintiff's books. It is undisputed that the canceled checks and a statement of the bank account were delivered each month by the bank. They were received by either the secretary-treasurer or the head bookkeeper, who turned them over to Kimery for the purposes mentioned. In order to cover up the forgeries, Kimery obtained a duplicate key to plaintiff's post office box. He would pick out certain letters which he knew contained checks payable to plaintiff, and would deposit these checks in plaintiff's bank account, but would not post them on plaintiff's books. The amounts of such deposits would approximately equal the amounts of the forged checks. Kimery then would take the forged checks from those returned by the bank and destroy them. By running off false adding machine tapes, he would make the bank balances appear to correspond with plaintiff's books. The head bookkeeper would check the totals submitted to him by Kimery. Finally, in a way not necessary to describe, the forgeries were discovered.

Upon the verdict of the jury the trial court rendered judgment allowing to plaintiff a recovery for the checks forged during the first month, but not for those forged thereafter.

Plaintiff appeals, asserting that he should have been allowed judgment for all of the forgeries, and in the alternative asserting that errors were committed which require that the case be reversed and remanded for a new trial. The six points of error and the contentions made thereunder will be discussed in order.

Under the first point of error plaintiff contends that its motion for judgment on the verdict should have been sustained be-

cause the jury found that the bank was negligent in failing to detect the forgeries. Plaintiff argues that the defense urged by the bank is one of estoppel, and that it cannot be urged here in the face of the finding that the bank itself was negligent. It also argues that the whole question is one of negligence and proximate cause, that the bank's negligence in failing in the first instance to discover the forgeries was the proximate cause of the loss, and that any negligence of the plaintiff thereafter committed could not have been the proximate cause of the loss.

■ All of the decisions appear to announce the rule that a bank depositor owes some character of duty to examine canceled checks and statements delivered to him by the bank, and that it is possible for the depositor to lose his right to recover for wrongful payment of forged checks by failure to examine his returned checks and statements and to report errors to the bank. The difficulty appears to have been in applying this general idea to specific cases. The language in some of the opinions is not altogether clear, and in some of them may be found remarks which seem to support plaintiff's contentions in the case before us. For example, in Coleman Drilling Co. v. First National Bank, Tex.Civ.App., 252 S.W. 215, 216, writ of error refused, the bank was found guilty of negligence in failing to detect the forgeries, and the depositor was found guilty of negligence in failing to call for and obtain his canceled checks and statements for a period of eight months, during which time the forgeries were committed. Plaintiff was allowed a recovery for all of the forgeries. The appellate court held that a recovery for all of the forgeries was sustainable upon either of two grounds:

First, it held that the plaintiff was not to be denied a recovery upon any ground of estoppel, arising out of the failure to call for and examine his checks and statements, because the bank was itself guilty of negligence, saying, in part:

"Now one principle of estoppel, as stated by Pomeroy in his work on Equity Jurisprudence (section 813), is that—

" 'The party who claims the benefit of an estoppel must not only have been free from fraud in the transaction, but must have acted with good faith and reasonable diligence; otherwise no equity will arise in his favor.' "

Second, the court held that the bank was in no position to claim that the depositor's negligence caused the loss, because the bank's own negligence contributed to the loss. So, the court held, the same result would be reached whether the bank's defense was predicated upon estoppel or upon negligence.

If the Coleman Drilling Co. case stood alone, we might feel compelled to follow it, in view of the recognition given by the Supreme Court in refusing the writ of error, but we believe that the expressions contained in a later opinion, by the Commission of Appeals, expressly adopted by the Supreme Court, are at variance with conclusions which might otherwise be reached from a study of the Coleman Drilling Company case, and that the later case must be followed. Southwest National Bank v. Underwood, 120 Tex. 83, 36 S.W. 2d 141, 142.

■ In the last mentioned case it is said: "A bank is bound to know the signatures of its customers and cannot charge the amount of forged checks paid by it against the account of the depositor whose name was forged unless such payments are properly attributable to the negligence or other fault of the depositor which misled the bank into paying such forged checks. 7 C.J. pp. 683, 688."

It is also said: "Where the bank is negligent in payment of forged checks, it will not be excused merely by reason of the fact that negligence is also attributable to the depositor, unless the depositor's negligence is shown to have been the proximate cause of the conduct of the bank in paying such checks and of resultant injury to it by reason thereof."

The court held that the bank was liable in any event for the forged checks paid prior to the date of the first statement. Such was the effect of the judgment in the case now before us.

Citing another case, the court says: "The depositor's negligence is immaterial unless it is of a kind that directly and proximately affects the conduct of the bank in the performance of its duties."

The court approves the holding in Weinstein v. National Bank, 69 Tex. 38, 6 S.W. 171, 5 Am.St.Rep. 23, to the effect that it is a question for the jury to determine, under appropriate instructions, whether the bank was prejudiced by the negligence of the depositor in failing to discover and detect the

forgery. In the case now before us the jury found that the negligence of the depositor was a proximate cause of the losses occurring after the delivery of the monthly statements.

After observing that most cases like this one result from forgeries committed by trusted employees, the court says: "In such cases, after his passbook has been balanced and returned to the depositor with any of the forged or fraudulently altered checks, the authorities practically agree that, in the absence of negligence on the part of the bank, the failure of the depositor to notify the bank within a reasonable time that such checks have been forged or fraudulently altered will, if the delay is caused by his negligence in not using due care and diligence in examining the passbook or statement and vouchers, or in giving notice, if he had discovered the forgeries, and such negligence caused injury to the bank and the latter was thus prejudiced by such failure of the depositor, constitute a defense by the bank to the depositor's suit for the money subsequently paid out on similar checks. (Citing authorities). And these are matters for the jury to pass on under appropriate instructions."

The court goes on to say that in any case it becomes a question of negligence, whether of the bank or of the depositor. "If the bank were negligent, the plaintiffs (depositors) would be estopped from claiming against it, only because their own negligence was directly connected with the forgeries and was the proximate and not the remote cause of the bank's negligence."

The court distinguishes the case before it from the Coleman Drilling Company case. Likewise, we believe, the case now before us is distinguishable from the Coleman Drilling Company case. In the latter case, the negligence of the depositor consisted in not calling for his statement at all for a period of eight months. It is obvious that this negligence of the depositor could not have been the proximate cause of the losses. The bank must have known that the statements were not delivered to the depositor. There existed no basis for a belief on the part of the bank that the depositor had examined his returned checks and statements, and had found them to be correct. In Southwest National Bank v. Underwood, the court says that the bank is liable in any event for the forged checks paid before the first statement was delivered to the depositor. It is only after a statement has been delivered to the depositor, and the depositor has failed to complain to the bank, that it could be said that the bank has been induced to believe that the checks theretofore paid were valid, or that it could be said that the bank may have lost an opportunity to guard against further forgeries, or recoup its losses.

It is significant to us that the Supreme Court in the latter case says nothing to the effect that the bank is cut off from setting up the depositor's negligence for the reason advanced in the Coleman Drilling Company case, which is that the defense is one of equitable estoppel, and is not available to one who has been negligent. The Supreme Court disposes of the Coleman Drilling Company case not on the ground just mentioned, but on the question of proximate cause.

The jury found in Southwest National Bank v. Underwood that the bank was negligent in failing to discover the forgeries. But nowhere in its opinion does the Supreme Court say that such negligence in any event cuts the bank off from asserting a defense based upon the depositor's negligence, whether such defense be called one of estoppel or not.

We cannot agree with plaintiff that the negligence of the bank in failing to detect the forgeries must in any event preclude a defense based upon the negligence of the depositor, on the theory that the defense is one of equitable estoppel which cannot be interposed by one who has himself been negligent.

In the case before us the bank contends that the true solution is to be found in treating the monthly statement of the bank as an account stated, which becomes binding, because it is an account stated, if the depositor fails within a reasonable time to object to the account. There are many decisions from other jurisdictions which seem to support this theory (see annotations in 11 A.L.R. 607, 18 A.L.R. 893, and 103 A.L.R. 1147), but we are inclined to the belief that the rules as have been announced by the Texas cases are not based precisely upon the doctrines applicable to accounts stated, but are special rules which apply to and grow out of the relationship created when the depositor places his money in the bank upon the agreement that it shall be paid out only upon checks drawn

by the depositor or the depositor's authorized agent.

No issue is made in the case before us as to the liability of the bank for the checks paid during the first month. Let us examine the situation, in the light of the verdict of the jury, with respect to the checks paid in subsequent months. The jury found that the bank was negligent in not detecting the forgeries, and that such negligence was a proximate cause of the losses. The jury also found that the plaintiff was negligent, both in failing to examine the returned checks, and in failing to discover that the deposits as shown on the monthly bank statements were not as shown on plaintiff's books, and that such acts of negligence were each a proximate cause of the losses thereafter occurring.

■ Plaintiff argues that its negligence could not have been either a proximate or a contributing cause, for the reason that its negligence occurred after the negligence of the bank, in point of time. Plaintiff argues that negligence cannot be contributory negligence if it occurs after the event has happened. The flaw in the argument seems to be in the failure to recognize the reason for the requirement that the depositor examine his returned checks and statements. This requirement is made in part in order to allow the bank an early opportunity to recoup the loss from the forger, but perhaps the more cogent reason for the requirement is that the bank may not be misled into continuing to pay out money on the forged checks in the belief that checks of the kind theretofore paid were valid checks. The record before us suggests that the forgeries were skillfully done, although the jury found that the bank was negligent in not discovering them. But an examination of the statements and a comparison of the statements with the plaintiff's books would at once have revealed that something was irregular about the account. The failure to examine the returned checks and the statements occurred, in point of time, before the forgeries committed during the month following. It seems to us that the time element, with respect to causation, is against rather than in support of plaintiff's contentions.

■ Plaintiff's second point of error is as follows: "The error of the court in rendering judgment only for the checks cashed prior to July 1, 1940, there being neither evidence nor jury finding that this was the date plaintiff should have discov-

ered the forgeries." Plaintiff argues that there is neither evidence nor jury findings as to when plaintiff could have or should have discovered the forgeries even if it had examined the returned checks and statements within a reasonable time. The evidence is that plaintiff made no examination of the returned checks and statements, save such as was made by Kimery, the forger, until June of 1941, when it discovered through other means that the forgeries had been committed. We think that the submission of the issues referred to was sufficient under the facts of this case, and that the findings of the jury are sufficient to bring the case within the rules above announced. The record does not show that plaintiff requested the submission of issues any more specific than those submitted.

Under the third point plaintiff contends that the trial court erred in admitting hearsay testimony concerning another forgery committed by Kimery, and under the fourth point contends that the court erred in permitting defendant to prove that Kimery had been previously indicted for forgery.

■ We are not able to see that this evidence could have affected the findings of the jury which are controlling here. The jury found, in effect, that plaintiff exercised due care in making an investigation of Kimery's previous record before he was employed by plaintiff. Furthermore, we doubt seriously if plaintiff preserved the point by proper objections at the time the testimony in question was admitted. While plaintiff's treasurer was on the witness stand he was asked by defendant's attorney if Kimery had pleaded guilty to a forgery indictment a few weeks before he was employed by plaintiff. Plaintiff's counsel stated, "Object to that unless the witness knows of his own knowledge that he had." Defendant's counsel then asked if the witness had since then found out about it. The witness answered, without objection from plaintiff, to the effect that he had since learned about it. The witness then testified, without objection, that he understood that Kimery had committed forgery with respect to the account of another company. Then he was asked if he had discovered that Kimery had forged a pardon or parole from the penitentiary. Plaintiff's counsel said: "Object to that, Your Honor, and ask that the jury not consider it, if he doesn't know". He was

asked several more questions concerning the matter, without further objection from plaintiff's attorney, and finally said that he heard about the matter about six months after the forgeries involved in the present suit were committed. From the questions and answers appearing at this point it is apparent that defendant was attempting to develop the fact that Kimery was an experienced and clever forger, and there is no suggestion in them that the question of plaintiff's negligence in turning over to Kimery the duty of examining the statements was then being inquired about.

The fifth and sixth points of error complain, respectively, of the submission of the sixth and tenth special issues. The sixth issue was: "Do you find from a preponderance of the evidence that plaintiff failed to examine the canceled checks returned by defendant about July 1, 1940, and each succeeding month thereafter, within a reasonable time?" The tenth issue was: "Do you find from a preponderance of the evidence that after the return of the June, 1940, statement and each month thereafter, plaintiff failed to discover thereafter within a reasonable time the deposits credited to plaintiff on the monthly statements not shown on plaintiff's books?" Plaintiff's entire argument under these two points is as follows:

"The issues as submitted simply inquire of the jury as to whether plaintiff failed to examine the checks and statements within a reasonable time. No issue is submitted to the jury as to what would be a reasonable time, nor was any issue submitted as to when plaintiff should have discovered the forgeries as pointed out in our argument under the second point. The issues as submitted furnish no basis for permitting plaintiff to recover on the forged checks up to a certain date.

"We think it is fundamental that the issue number 10, as submitted, is duplicitous in that it inquires about the monthly statements for each of the months from June, 1940, to June, 1941."

So far as the record before us shows, plaintiff did not submit to the court any specially requested issues other than those given. As has already been said, we think that the issues submitted, at least in the absence of a request for the submission of other special issues, and the answers thereto, were sufficient to bring the case within the rules of law above announced. If the statements and returned checks were not examined within a reasonable time, in view of the findings of proximate cause, then plaintiff became bound by the statements rendered to him.

Upon the question of the issues being duplicitous, they put a greater burden upon defendant than would have been put upon defendant had separate issues been submitted inquiring concerning the several monthly statements. Plaintiff has suffered no damage from the manner in which the issues were submitted, and therefore presents no reversible error.

We are of opinion that the trial court rendered the correct judgment in the cause, and that it should be affirmed.