No. 38,151

H. L. Herbel, doing business as The Chase Company, *Appellant* and *Cross-Appellee,* v. The Peoples State Bank of Ellinwood, *Appellee* and *Cross-Appellant.*

(228 P. 2d 929)

Opinion filed March 10, 1951.

*L. E. Quinlan,* of Lyons, argued the cause and was on the briefs for the appellant.

*LaRue Royce,* of Salina, argued the cause, and *E. S. Hampton, H. H. Dunham, Jr., John Q. Royce,* and *H. G. Engleman,* all of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by a depositor against a bank to recover the sum of $5,000 paid out of his account on a series of checks forged by his bookeeper and office assistant. A jury was waived and the action was tried by the court. It rendered judgment for plaintiff on the first of five forged checks in the total sum of $500 and denied recovery on the remaining checks. The plaintiff appeals from the latter portion of the judgment and the defendant cross appeals from the former portion thereof.

The plaintiff was the owner and operator of an oil field, supply

and welding business at Chase. He lived at Chase but was frequently away from home. The checks were drawn on the defendant bank at Ellinwood but were paid originally by a bank located at Chase. The court made voluminous findings of fact covering numerous details and conclusions of law. We do not deem it necessary to set forth all the detailed findings of fact. Certain findings of fact were challenged by both parties. An examination of the record discloses the material findings are supported by substantial testimony. It, therefore, follows the findings of fact cannot be disturbed on appellate review.

By reason of the voluminous and detailed findings of fact pertaining to some forty-eight checks covering the period from August 16, 1946, to August 16, 1947, inclusive, and numerous bank statements, material portions thereof will be stated in substance only. A few preliminary findings, however, will be stated as made. They are:

"1. The plaintiff is the sole owner and operator of a business in Chase, Kansas, operated under the name of 'The Chase Company'. He has been in business in Chase, Kansas, since 1936 and doing business as 'The Chase Company' since 1942. In the fall of 1944, he opened a banking account in the Chase State Bank at Chase, Kansas, and gave it his signature card. He maintained this account at all times until November, 1947. During this time he made deposits in said bank, drew checks on his account there, cashed checks there and bought drafts and took up drafts there. He was personally acquainted with all of the officers and employees of said bank and they were well acquainted with him. The officers and employees of said bank were familiar with the plaintiff's signature.

"2. The defendant, The Peoples State Bank of Ellinwood, Kansas, is a banking corporation, organized and existing under the laws of the State of Kansas. It has as its principal place of business, Ellinwood, Kansas, approximately 20 miles west of Chase, Kansas.

"3. In July, 1945, the plaintiff opened a general checking account in the defendant bank in the name of 'The Chase Company'. He gave the defendant a signature card which he alone signed. This account was the principal bank account used by him in the conduct of his business. It was a very active account. He had his own checks printed for use in making withdrawals from this account. The blank checks were printed on pads, without stubs. The blank checks were numbered serially. At the top of each check was printed the name 'The Chase Company' and the number of the check. Below the space left for the name of the payee and the amount of said check and in the lower left corner of said check the name of the defendant bank appeared, and on the lower right corner the name 'The Chase Company' appeared, below which was a blank line for the signature of the person executing said check. These pads of checks were so constructed that whenever a check was written a

carbon copy of the check with the same serial number was made. These carbon copies of checks so made were filed as a part of the permanent records of 'The Chase Company'.

"4. All checks, with their serial numbers, the name of the payee and the amount, were entered upon the books of 'The Chase Company', under different headings, indicating whether they were credited to the individual drawing account of H. L. Herbel, expenses, accounts payable, etc.

"5. Substantially all deposits in the defendant bank to the account of 'The Chase Company' were made up at Chase, Kansas, and mailed to the defendant bank.

"6. Substantially all checks drawn on said account were received by the defendant in cash letters from The Federal Reserve Bank of Kansas City, Missouri. Approximately from 3 to 10 checks of 'The Chase Company' were received in each such cash letter. When these checks were received by the defendant bank the signature on said check was examined by the officers and employees of said bank, who were familiar with the signature of plaintiff, and when they were satisfied with the genuineness of said signature said check was charged to the account of 'The Chase Company'."

Other material facts found by the court, in substance, are: The defendant mailed and the plaintiff received monthly, at times bimonthly, bank statements disclosing amounts deposited and withdrawn each day, together with all cancelled checks evidencing the withdrawals; a carbon copy of all checks written in plaintiff's office was kept and plaintiff's books disclosed the purpose of each check; each bank statement sent to plaintiff had printed thereon the following:

"Please examine at once. If no error is reported in ten days, the account will be considered correct."

The checks ranged in amounts from $48 to $200; the name of the plaintiff, "H. L. Herbel", as *maker*, was forged on each check by Billie Mills; the only difference in the checks was that she made the plaintiff the payee in some of them and herself the payee in others; as to the former she forged the name of the plaintiff as indorser and on the latter she obtained the cash by presentation of the check for payment; the first four forged checks in the total sum of $400, cashed between August 16 and September 14, 1946, inclusive, resulted in overdrawing plaintiff's account in the sum of $142.26; on September 25, 1946, the defendant bank mailed notice of overdraft to plaintiff which he received; the notice stated:

"Our books show your account overdrawn $142.26. If this is correct, kindly call at once; if not correct, please notify us immediately. If an immediate notice is given you that your account is overdrawn, do not misconstrue the haste. It is a wise provision to detect forgeries, raised checks or mistakes."

The court, in substance, further found: If the defendant officers and employees had used due diligence in examining the first five checks, including the one dated September 25, 1946, the forgeries would have been detected and all subsequent forgeries would likewise have been detected; if plaintiff, when his account became overdrawn and the bank advised him by its notice dated September 25, 1946, had used due diligence and had examined his statement and the returned checks he could and would have discovered the forged checks in the total sum of $400 had caused his account to be overdrawn and that all subsequent forgeries except the check dated September 25, 1946, in the amount of $100 could have been prevented; the last bank statement prior to any complaint from the plaintiff was delivered to him August 29 or 30, 1947, which included five forged checks; on August 31, 1947, plaintiff, for the first time in at least a year, examined the bank statement and cancelled checks; he immediately recognized the five checks as forgeries and then proceeded to examine back statements which contained all the forged checks involved in this action; on September 2, 1947, having completed such examination, he made demand on the defendant bank for the full amount of the checks; the demand was refused.

With respect to the checks covering the entire period the court, in substance, found: The name of H. L. Herbel as *maker* could and would have been detected by the officers and employees of the defendant bank if they had exercised ordinary diligence in examining the signatures; defendant's officers and employees made no examination of the *indorsements* to determine whether or not they were forgeries but relied upon the previous *indorsement* guarantee by the cashing bank; the defendant bank negligently and willfully failed to examine plaintiff's checks for forged *indorsements*.

The court's conclusions of law were:

"1. The plaintiff was guilty of negligence which was the proximate cause of any loss or damages sustained by him on account of checks to which his name as maker and payee were signed and endorsed by Billie Mills, which were charged to the account of 'The Chase Company' by the defendant bank, after the check No. 2763, dated September 25, 1946, in the amount of $100.00.

"2. The defendant bank is guilty of negligence in connection with the inspection of the checks in suit dated August 16, 1946, August 17, 1946, September 4, 1946, September 14, 1946, and September 25, 1946, as to their genuineness or in charging said checks to said account, which was the proximate cause of any loss or damage to the plaintiff.

"3. The plaintiff, by his acts and conduct, with knowledge of the facts or

with notice or means of knowledge from which he should have known the facts, has acquiesced in and ratified the genuineness of the signatures on each of the checks subsequent to the check dated September 25, 1946, charged to his account by the defendant bank and the authority of said bank to charge each of said checks to said account, and by his acts and conduct is estopped to deny the genuineness of said checks or the authority of the bank to charge each of said checks to said account.

"4. The acts and conduct of the plaintiff constitute each of said bank statements subsequent to the check dated September 25, 1946, an account stated for the period covered by said statement, and the plaintiff is estopped to question either the validity of said checks charged to said account or the authority of the defendant bank to charge each of said checks to said account or the correctness of said account, and puts the statute of limitations in motion.

"5. The defendant was guilty of negligence in failing to make a reasonably diligent inspection of the checks in suit, when presented for payment, and in failing to detect that the name H. L. Herbel, as maker on each of such checks, was a forgery.

"6. The defendant was negligent in that it willfully and negligently failed to inspect or examine the endorsement of the name H. L. Herbel where such endorsement appears on the checks in suit.

"7. The plaintiff is not barred from recovery by Section 9-171 General Statutes of Kansas for 1935."

Before considering the effect of findings of negligence of the bank's officers or employees and the negligence of the depositor we are confronted with two statutes covering the period of all the forgeries in question. G. S. 1935, 9-171 provided:

"No bank shall be liable to a depositor for the payment by it of a forged or raised check unless within six months after the return to the depositor of the voucher of such payment, such depositor shall notify the bank that the check so paid is forged or raised."

That statute was effective until repealed by chapter 102, laws 1947, and by section 58 thereof, a new statute was enacted. (G. S. 1949, 9-1209.) It became effective June 30, 1947, and reads:

"No bank shall be liable to a depositor for the payment by it of any altered, forged or raised check, or a check with an unauthorized signature, unless the depositor shall notify such bank within six months after the return to the depositor of the voucher or canceled check that the check so paid was altered, forged, raised or unauthorized."

Just why the trial court referred only to the first statute is not apparent. Nor does it appear on what theory it concluded the first statute did not bar recovery on any of the checks. In any event plaintiff contends neither of the statutes bars recovery on forged checks dated more than six months prior to receipt by the depositor of a bank's statement including the forged checks. In support of

the contention he cites *Kansas City Title & Trust Co. v. Fourth Nat'l Bank,* 135 Kan. 414, 423, 10 P. 2d 896. The case does not support plaintiff's contention. In fact the opinion clearly indicates the statute is applicable to forged checks. In that case, decided long prior to the enactment of the last statute, it was held the first statute contained no express limitation concerning the time within which an action might be brought against a bank for the payment of a depositor's funds on a check bearing a *forged indorsement.* The case relates solely to forged *indorsements.* The statute of limitations barring the right to bring an action was there involved. Here it is not. Here the first question involved is whether the bank is liable at all, absent the depositor's compliance with the statute.

The repealed and the new statutes both clearly cover forged checks which all of them were in the instant case. Whether the amended statute was intended to, and does, cover indorsements need not be determined. The mere fact indorsements were forged on the particular checks in which the plaintiff was made the payee in nowise alters the fact that on their face not only the name of the payee but also the name of the maker was forged. They were forged checks. It, therefore, follows both statutes are applicable to all the checks and that the bank was not liable unless the depositor notified the bank in conformity to the provisions of the statute. And such nonliability of the bank resulted by virtue of the statutes irrespective of the bank's negligence. That is the clear legislative mandate and the courts are bound by it.

The only time plaintiff notified the bank it had paid forged checks was on September 2, 1947. Applying the statutes to undisputed findings we are forced to conclude the bank is not liable on checks paid on August 16, 1946, to and including February 17, 1947, in the sum of $2,300. The only question remaining for determination is whether the bank is liable on the twenty-seven checks in the total sum of $2,700, paid within the statutory period of six months, prior to the notification by the depositor that the checks were forgeries.

Introductory to an answer to that question a few settled principles may be briefly stated. The relationship between the bank and the depositor is that of debtor and creditor. Absent any special agreement, as here, there is an implied contract that the bank will pay nothing out of the depositor's account except on his valid order. The bank is charged with knowledge of the depositor's signature. It pays a forged check at its own peril. In contemplation of law a forged check is paid out of the bank's own funds and not out of the

depositor's account. Although no degree of care on the part of the bank will excuse it from liability, it may, under certain circum-stances, justify the payment of a forged check by reason of what the depositor does or fails to do. In *United Workmen v. Bank,* 92 Kan. 876, 142 Pac. 974, it was said:

"It was formerly held that a depositor owed a bank no duty to examine his pass book and vouchers to detect forgeries although the means of detection were thus afforded (*Weisser v. Denison,* 10 N. Y. 68), but recent decisions hold otherwise (*Morgan v. U. S. Mortgage & Trust Co.,* 208 N. Y. 218, 101 N. E. 371; Note, 7 L. R. A., n.s., 744.) . . . The object of requiring such an examination is to afford seasonable notice to the bank of any unauthorized payment in order that it may have an opportunity to retrieve against losses." (p. 884.)

See, also, *Kansas City Title & Trust Co. v. Fourth Nat'l Bank,* 135 Kan. 414, 424, 10 P. 2d 896.

Defenses of the bank for payment of forged checks which have been recognized by certain courts are based on the theory of estoppel, negligence, or misleading conduct of the depositor which directly or proximately caused the bank to pay, and in some instances courts have held a monthly, or other periodical, bank statement delivered to the depositor constitutes an account stated. This court has held a bank statement delivered to the depositor constitutes an account stated for the purpose of starting the running of the statute of limitations on an action by the depositor to recover the amount paid on forged checks. (*Kansas City Title & Trust Co., v. Fourth Nat'l Bank,* supra.) But what has that to do with the question of a depositor's right to recover in an action on the merits where the action is filed in time? On the trial the depositor has a right to assert and prove the bank's own primary negligence and to have the effect thereof determined.

This court has had no occasion to determine the question of the effect on the bank's liability of its own original and continuing negligence in failing to discover forgeries. It is on this last question that the parties to this action part ways. It frankly should be conceded some of the authorities do likewise. Briefly stated the trial court in the instant case permitted the plaintiff depositor to recover the amount of the forged checks which were paid prior to the first bank statement which included a return of the first forged checks but denied recovery on all subsequent checks on the theory the loss on such checks was due to plaintiff's negligence notwithstanding the primary and continuing negligence of the bank.

Without attempting to list all the cases it should be stated there is respectable authority for the position adopted by the trial court. Some of the decisions supporting divergent views are collected `in annotations following cases cited in A. L. R. See 28 A. L. R. 1435; 67 A. L. R. 1121; 103 A. L. R. 1147. Among additional decisions relied on by the bank are: *McCarty v. First Nat. Bank,* 204 Ala. 424, 85 So. 754; *McNeely Co., Appellant, v. Bank of N. America,* 221 Pa. 588, 70 A. 891; *Inter. Hos. Mills, Inc., v. First Nat. Bk. Ap.,* 139 Pa. Superior Ct. 181, 11 A. 2d 537; *Atlas Metal Works, v. Republic Nat. Bank,* (Tex. Civ. App.), 176 S. W. 2d 350; *Production Co. v. Bank of Commerce,* 281 Mich. 230, 274 N. W. 774; *White Castle System v. Huntington Nat. Bank,* (Ohio App.), 43 N. E. 2d 737; *First State Bank v. First Nat. Bank,* 314 Ill. 269, 145 N. E. 382.

On the other hand numerous authorities hold the bank cannot relieve itself of liability by defenses previously mentioned unless the bank itself is free from negligence. In other words they hold the depositor has an obligation to help protect the bank where it acts with reasonable care and diligence in discovering forgeries in accordance with its duty but that the depositor is not duty bound to protect the bank against its own negligence. Some of these authorities are: *Leather Manufacturers' Bank v. Morgan,* 117 U. S. 96, 29 L. ed. 811, 6 S. Ct. 657; *Critten v. Chemical Nat. Bank,* 171 N. Y. 219, 63 N. E. 969; *Morgan v. U. S. Mortgage & Trust Co.,* 208 N. Y. 218, 222, 101 N. E. 871; *Screenland Magazine v. National City Bank,* 42 N. Y. S. 2d 286, 288; *Nat'l. Dredging Co. v. Farmers Bank,* 6 *Pennewill's* (Del.) 580, 591, 69 A. 607; *Fish & Oyster Co. v. First Nat. Bk.,* 166 Miss. 162, 177-178, 146 So. 116; *Wussow v. Badger State Bank,* 204 Wis. 467, 471-472, 234 N. W. 720; *New York Produce Exchange Bank v. Houston,* 169 F. 785; *First Nat. Bank v. Farrell,* 272 F. 371, 377; *Mattison-Greenlee Service Corporation v. Culhane,* 20 F. Supp. 882, 886; *Irving Trust Co. v. National City Bank of New York,* 78 F. 2d 665, 666; *Kenneth Inv. Co. v. Nat. Bk. of the Republic,* 103 Mo. App. 613, 618, 77 S. W. 1002; *Martin v. First Natl. Bank,* 358 Mo. 1199, 219 S. W. 2d 312, on related subject; *California V. Union v. Crocker Nat. Bk.,* 37 Cal. App. 743, 749, 174 Pac. 920; *Sommer v. Bank of Italy etc. Assn.,* 109 Cal. App. 370, 376, 293 Pac. 98; *Glassell Dev. Co. v. Citizens' Nat. Bk.,* 191 Cal. 375, 380, 216 Pac. 1012; *Basch v. Bank of America,* 22 C. 2d 316, 322, 139 P. 2d 1; *Merchants' Nat. Bank v. Nichols &*

*Co.,* 223 Ill. 41, 79 N. E. 38; *Illinois Tuberculosis Ass'n v. Springfield Marine Bank,* 282 Ill. App. 14, 28-29; *Rudisill Soil Pipe Co. v. First Nat. Bank of Anniston,* 224 Ala. 436, 440, 140 So. 569; *Bank v. Richmond Elec. Co.,* 106 Va. 347, 56 S. E. 152; *Graham v. Southington Bank & Trust Co.,* 99 Conn. 494, 121 A. 812; *Coleman Drilling Co. v. First Nat. Bank,* (Tex. Civ. App.) 252 S. W. 215; (but see *Atlas Metal Works v. Republic Nat. Bank,* [Tex. Civ. App.] 176 S. W. 2d 350); *Kimball v. R. I. Hosp. Nat. Bank,* 72 R. I. 144, 153-154, 48 A. 2d 420; 7 Am. Jur., Banks, § 516; 5 Michie on Banks and Banking, § 284, p. 553; 6 Zollmann on Banks and Banking, §§ 4143, 4144; anno. 103 A. L. R. 1147, 1155; 9 C. J. S., Banks and Banking, § 356 (a); 60 Harv. L. Rev., 643, (1946-1947).

Every aspect of the question before us has been fully and ably treated in the cases previously cited herein. Extended quotations therefrom are unnecessary. A few, however, may be helpful. In the early case of *Leather Manufacturers' Bank v. Morgan,* supra, Mr. Justice Harlan, speaking for the Supreme Court of the United States, quite tersely, said:

"Of course, if the defendant's officers, before paying the altered checks, could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of those checks, even if the depositor omitted all examination of his account." (p. 112.)

That principle has been the basis of many of the later cases. We think the statement by the California court contained in the Glassell case, *supra,* covers the subject quite adequately. It was there said:

"As between the bank and its depositors the payment of forged or altered checks by it is made at its peril and cannot be charged against the depositor's account unless some negligent act or conduct of his has contributed to induce such payment—the bank itself being free from negligence, or unless by his subsequent conduct in relation to the matter he is upon equitable principles estopped to deny the correctness of such payments. [citations]

"And the weight of authority, and perhaps of reason, supports the view that when a depositor's pass-book has been written up and returned to him with canceled checks which have been charged to his account, it is his duty to examine such checks within a reasonable time, and if they disclose forgeries or alterations to report them to the bank, failing in which he cannot, if his failure results in detriment to the bank, dispute the correctness of payments thereafter made by it on similar checks. [citations]

"This rule, however, assumes that the bank itself has not been guilty of negligence in making the payment, for when by the exercise of proper care it could have discovered the alteration or forgery, it must bear the loss notwithstanding that the depositor failed in his duty to examine the accounts." (p. 379, 380.)

For cases to the same effect citing many later decisions see *Basch v. Bank of America, Screenland Magazine v. National City Bank, Kimball v. R. I. Hosp. Nat. Bank, First Nat. Bank v. Farrell, Mattison-Greenlee Service Corporation v. Culhane,* omnia supra, and footnotes in text authorities above cited.

In *First Nat. Bank v. Farrell,* supra, the federal court said:

"But the general rule arising from the examination of pass-book or statements by the depositor himself, and the variation of the rule arising from the examination of them by his authorized agent, involve in practically every reported instance wrongdoing where the negligence of the bank was not involved and where the wrongful act was entirely that of a person other than the bank. Both the rule and its variations disappear altogether where the bank has been negligent in detecting the fraud. . . ." (p. 377.)

With reference to the effect of the primary contractual obligation of the bank, see *Kimball v. R. I. Hosp. Nat. Bank,* supra, and *Wussow v. Badger State Bank,* supra.

The relaxation of the early rule of absolute contractual liability of a bank which brought into operation the rule pertaining to a depositor's duty to examine bank statements and to notify the bank of forgeries disclosed thereby is not based on contract, absent a special agreement to that effect as in the instant case. Without such special agreement that duty of the depositor is rooted in equitable doctrine. It, therefore, seems to us that before a bank should be permitted to invoke as a defense the violation by a depositor of his duty in equity the bank, on equitable principles, should first be required to show it is free from negligence in the performance of its primary contractual duty. Here the bank was originally and continuously negligent in discovering the forgeries.

Concerning the doctrine of estoppel, it properly has been asserted:

". . . an estoppel in equity does not arise unless the one asserting it has acted with due diligence. Due diligence being necessary to enable one to assert an estoppel, the bank must show due diligence before it can assert the negligence of the depositor. The whole doctrine of estoppel is a creation of equity and is governed by equitable principles. 2 Pomeroy, Eq. Jur. (4th ed.) § 813. The bank's freedom from negligence is treated as a 'preliminary question' in . . . [citations] . . ." (*Wussow v. Badger State Bank,* supra, p. 474.)

To the same effect are, also, *Basch v. Bank of America,* supra, and *Graham v. Southington Bank & Trust Co.,* supra.

It probably should be noted that in some of the cases relied on by the bank and in which it was held the negligence of the de-

positor was the proximate cause of the loss, the primary negligence of the bank was not made an issue. We readily concede if a bank has diligently performed its primary contractual duty it may properly invoke equitable defenses against the depositor.

In the instant case the bank's negligence was a vital issue. The bank's failure to discover the forgeries was the first, *the primary negligence* in the case. The bank's primary negligence never ceased. Its primary duty to detect forgeries continued with respect to all the remaining checks. Except for its primary and continued negligence, a breach of its contractual duty towards the plaintiff, there would have been no loss on any checks. In order to hold, under such facts, that the depositor's negligence constituted the proximate cause of the loss is to relieve the bank completely of its contractual duty and to shift the entire responsibility for the discovery of forgeries from it to the depositor, notwithstanding the bank's own primary and continuing negligence. This court is not willing to relax the rule with respect to a bank's duty to such an extent.

It seems to us that such a broad exemption of a bank's liability would tend to invite carelessness by banks in detecting forgeries. Such a broad relaxation of the rule with respect to the duties of a bank, in which a depositor has implicit faith, would mean that the moment a depositor paid an overdraft without first examining his returned checks he would be held to have acquiesced in and ratified the bank's payment of future similar checks notwithstanding they plainly disclosed on their face they were the rankest kind of forgeries. There is something wrong with that kind of a rule. The thing which, in our opinion, is wrong with it is that it unjustly relieves the bank of its continuing duty to use reasonable diligence in detecting forgeries. The negligence of a depositor does not relieve the bank of its continuing duty to exercise reasonable care.

In the Screenland Magazine case, *supra,* the New York court held the bank could not prevail if it was guilty of negligence which contributed to the loss but rendered judgment in favor of the bank on the ground the depositor was clearly at fault and the bank was not shown to be guilty of any negligence. The court's statement impresses us as being both realistic and sound. It reads:

"The law applies the rule of reason in dealing with a situation such as is here presented. The bank starts with the burden of strict liability. In the first instance it is virtually the insurer of the validity of its depositor's signature. That strict liability is modified when it appears that the depositor himself has

been guilty of a breach of duty owed to the bank, when because of the carelessness or fault of the depositor a long continued repetition of the forgeries is made possible. When the depositor is so at fault, the liability of the bank ceases to be that of an insurer; it becomes liable to the negligent depositor only if the bank itself has also been negligent in failing to detect the forgery. The strict liability imposed by the law in the first instance is then transformed into an obligation on the part of the bank to use reasonable care—that degree of prudence which could reasonably be expected of a bank." (p. 290, 291.)

In the instant case the court expressly found the bank did not exercise that kind of care.

The opinion might be concluded at this point except for one matter which may be misunderstood unless clarified. That subject has been deliberately omitted previously herein for the reason this court desired not to confuse it with the duty of a depositor to examine bank statements and to notify a bank of forgeries disclosed thereby. The opinion has been written squarely with that duty of the depositor in mind. We may say, however, a part of the record in which the parties stipulated concerning certain facts clearly indicates the court believed plaintiff noticed the first sentence of the bank statement pertaining to the overdraft but that he did not notice the remaining portion thereof. The court having made no specific finding on that particular point we have omitted it from consideration in the opinion. No special agreement was shown to exist in the instant case, as is found in some cases, whereby the depositor agrees to be bound by the substance of notices on bank statements. We express no views in the instant case relative to the legal effect of that particular part of the bank statement which the trial court believed the plaintiff did not notice.

The judgment of the trial court is reversed with directions to enter judgment in favor of the plaintiff in the sum of $2,700 together with interest thereon at the rate of six percent per annum from and after September 2, 1947, and for the costs of the action.