Wussow, Respondent, vs. Badger State Bank of Milwaukee, Appellant.

*January 14—May 12, 1931.*

For the appellant there were briefs signed by *Upham, Black, Russell & Richardson,* attorneys, and oral argument by *Clark M. Robertson* of counsel, all of Milwaukee.

For the respondent there were briefs by *Churchill, Bennett, Churchill & Davis* of Milwaukee, and oral argument by *W. H. Churchill.*

On motion for a rehearing, briefs were also filed by *Lines, Spooner & Quarles,* attorneys for the Wisconsin Bankers' Association, and *Maxwell H. Herriott* and *Lester S. Clemons* of counsel, and by *Quarles, Spence & Quarles,* attorneys for the Milwaukee Clearing House Association, and *T. H. Spence* of counsel, all of Milwaukee, as *amici curiæ.*

The following opinion was filed February 10, 1930:

FOWLER, J.  The appellant claims that: (1) The court should have directed a verdict in its favor or rendered judgment in its favor notwithstanding the verdict.  And that if it was not so entitled to judgment a new trial should be ordered because (2) the jury's finding of the bank's negligence is not supported by the evidence.  (3) The court should have submitted to the jury the questions requested by the defendant.  (4) The court erred in instructions. (5) Prejudicial reference was made to insurance held by the bank.

(1) The duty of a bank in respect of paying out a depositor's money is to pay it out only by his authorization. The bank owes the depositor the amount of his deposit less his authorized payments.  *Peart v. Schwenker,* 200 Wis. 200, 227 N. W. 945; *Endlich v. Bank of Black Creek,* 200 Wis. 175, 227 N. W. 866.  Because of their contractual relation the bank is in the first instance absolutely bound to restore to the depositor all amounts paid on forged checks although it was free from negligence in not detecting the forgeries.  The plaintiff's cause of action does not rest

upon negligence but upon the contract. There is no dispute between the parties as to this rule. *Peart v. Schwenker, supra; Endlich v. Bank of Black Creek, supra.* A bank is bound to know the signatures of its depositors and it pays checks purporting to be signed by them at its peril. *Frank v. Chemical Nat. Bank,* 84 N. Y. 209, 214; *McCornack v. Central State Bank,* 203 Iowa, 833, 211 N. W. 542.

The defendant contends that notwithstanding this rule the depositor may not recover if his negligence caused the bank to pay out money on the forgeries. It admits that it was liable to make good the amount of the forged checks included with the checks returned to the plaintiff with the bank's statement after the first payment of a forged check was made. But it urges that it then became the duty of the depositor to examine his checks and the statement and discover whether the balance stated was correct and whether any forgeries were included and report any discrepancies in balance and any forgeries to the bank at once. It contends that had the plaintiff made such examination with due care it would have discovered the forgeries and that had he reported them on discovery the bank would have been put on guard against Demerath's forgeries and saved from further payments upon them. The bank is correct as to the duty of the depositor. *C. E. Erickson Co. v. Iowa Nat. Bank* (Iowa) 230 N. W. 342; *Stumpp v. Bank of New York,* 212 App. Div. 608, 209 N. Y. Supp. 396; *General Cigar Co. v. First Nat. Bank,* 290 Fed. 143; *Critten v. Chemical Nat. Bank,* 171 N. Y. 220, 63 N. E. 969; *California Vegetable U. Co. v. Crocker Nat. Bank,* 37 Cal. App. 743, 174 Pac. 920. And if the depositor leaves the performance of this duty to an agent he is bound by the agent's acts. *Leather Manufacturers Bank v. Morgan,* 117 U. S. 96, 6 Sup. Ct. 657; *First Nat. Bank v. Farrell,* 272 Fed. 371; *Critten v. Chemical Nat. Bank, supra.* But it does not follow that the depositor cannot recover if the bank was itself negligent. The bank's exemption from liability

in such case is dependent on its own freedom from negligence. *Hammerschlag Mfg. Co. v. Importers' & Traders' Nat. Bank,* 262 Fed. 266, 271; *Leather Manufacturers Bank v. Morgan, supra,* p. 112. In the cases holding the bank exempt from liability because of the plaintiff's negligence, it affirmatively appears that the bank was not negligent or the question of its negligence was not raised. If due care on the bank's part would have discovered the forgeries without the aid of the plaintiff, the bank cannot then escape its contractual liability merely because the plaintiff was also negligent. In such case the bank does not pay because previous forgeries were not reported to it. It pays because on its own negligent inspection it supposed the checks were genuine. *Leather Manufacturers Bank v. Morgan, supra; Kenneth Inv. Co. v. National Bank of the Republic,* 103 Mo. App. 613, 77 S. W. 1002; *Critten v. Chemical Nat. Bank, supra; Coleman D. Co. v. First Nat. Bank* (Tex. Civ. App.) 252 S. W. 215; *First Nat. Bank v. Farrell, supra; Union Tool Co. v. Farmers & M. Nat. Bank,* 192 Cal. 40, 218 Pac. 424; *New York Produce Bank v. Houston,* 169 Fed. 785; *National D. Co. v. Farmers Bank,* 6 Pennewill (Del.) 580, 69 Atl. 607, 611; *McCornack v. Central State Bank, supra,* p. 840.

The defendant also contends that the court should have awarded judgment in its favor because the statements received by the plaintiff constituted an account stated. It is urged that the recitals printed on the signature card and on the statements themselves mentioned in the statement of facts support this contention. The recitals, except as to the ten-day provision, do no more than state the implied legal obligation of the depositor. A bank can hardly limit the depositor's time to make examination or fix the effect of omission to do so by "setting a trap for the unwary" in this way. Only by affirmatively showing that the depositor expressly so agreed by having his attention called directly to it, could

such a statement have the force of a contract. *Los Angeles Inv. Co. v. Home Savings Bank,* 180 Cal. 601, 182 Pac. 293. The testimony of the plaintiff that the statement was never called to his attention or noticed by him precludes giving to the statement the dignity and effect of a contract, either to constitute the statements accounts stated or relieve the bank from its liability for payment of forged checks. It is true that under some circumstances a bank's statement has been treated as an account stated as against the bank. *Stevens v. Montfort State Bank,* 183 Wis. 621, 626, 198 N. W. 600. And under especial circumstances they have been so treated as against the depositor. *Calvin Coal Co. v. First Nat. Bank* (Tex. Civ. App.) 286 S. W. 901. But even in such cases they have been held subject to correction for error. *McCornack v. Central State Bank, supra; Los Angeles Inv. Co. v. Home Savings Bank, supra,* p. 612; *Farry v. Farmers' & M. Bank* (N. J. Ch.) 58 Atl. 305. The general rule is that an account stated may always be impeached for mistake. 1 Ruling Case Law, p. 217; *Segelke & Kohlhaus Mfg. Co. v. Vincent,* 135 Wis. 237, 241, 115 N. W. 806. An account stated is only *prima facie* evidence of its correctness. *Ripley v. Sage L. & I. Co.* 138 Wis. 304, 309, 119 N. W. 108; *Gurnett v. J. H. Flick Const. Co.* 163 Wis. 574, 158 N. W. 325; *Stevens v. Montfort State Bank, supra.*

(2) We consider that the jury's finding that the bank was negligent in not discovering the forgeries is amply supported by the evidence. No useful purpose would be served by stating in detail the evidence on which we base this conclusion.

(3) The questions which the defendant requested to be submitted to the jury all relate to the plaintiff's negligence. As the court found the plaintiff negligent as a matter of law, we are unable to see how the defendant was prejudiced by refusal to submit them.

(4) The defendant contends that the court erred in placing upon the defendant the burden of proving that it was free from negligence. It urges that as the burden was on the bank to show plaintiff's negligence to exempt it from liability, the burden was on the plaintiff to show that the bank was negligent to relieve him from the effects of his negligence by analogy to the rule in negligence cases where the plaintiff has the burden of showing negligence and the defendant the burden of showing contributory negligence. There are cases involving recovery of unauthorized payments by banks which speak of negligence of the plaintiff and contributory negligence of the bank. But the situations are hardly analogous. The bank's claim in such cases is that the depositor is in equity estopped to assert that the bank is absolutely liable because the defendant's conduct has caused or contributed to the bank's payment of the forged check. But it is not unjust to require as a prerequisite condition to asserting such estoppel that the bank show that it was itself free from negligence. The right to assert an estoppel in equity does not arise unless the one asserting it has acted with due diligence. Due diligence being necessary to enable one to assert an estoppel, the bank must show due diligence before it can assert the negligence of the depositor. The whole doctrine of estoppel is a creation of equity and is governed by equitable principles. 2 Pomeroy, Eq. Jur. (4th ed.) § 813. The bank's freedom from negligence is treated as a "preliminary question" in 3 Ruling Case Law, p. 539; *National D. Co. v. Farmers Bank, supra,* pp. 607, 611. It is expressly held in *Morgan v. U. S. M. & T. Co.* 208 N. Y. 218, 222, 101 N. E. 871, and *Union Tool Co. v. Farmers & M. Nat. Bank,* 192 Cal. 40, 218 Pac. 424, 427, that "before a defendant bank will become entitled to escape its liability for payment of a forged check it must be shown that the bank itself was free from negligence," notwithstanding that in California, and in New York since 1920 as we infer, the

burden of proving contributory negligence in negligence cases is on the defendant.

It is also urged that defendant was prejudiced because the court should have given its requested instruction to the effect that the jury might consider in determining the reasonable care and diligence exercised by the bank that the plaintiff neglected to examine his returned checks and report forgeries. The court instructed on this subject quite fully and carefully and closed with the phrase: (the jury should consider) "the conduct and dealings between the parties to the action and all other evidence bearing upon the question." The plaintiff's conduct having been called generally to the attention of the jury, we consider that it was not necessary to make further special mention of it.

(5) Respondent claims lastly that it should have a new trial because plaintiff's counsel persisted over objection in having all the conversation between plaintiff and the president of the bank when the latter informed the former of the forgeries, as a consequence of which the president testified that he informed the plaintiff that the bank had insurance and the plaintiff testified that the president said he would call up the insurance company. On each such occasion defendant moved for a mistrial. The mistrial was denied, but the court very clearly and pointedly told the jury to disregard the statements and that insurance had nothing to do with their determination. Plaintiff's counsel disavowed intention to draw out the fact of insurance. We cannot say that under all the circumstances and all the evidence the respondent was prejudiced by the disclosure.

*By the Court.*—The judgment is affirmed.

The following opinion was filed May 18, 1931:

PER CURIAM. A motion for rehearing is made herein based principally on two assumptions: that the decision is erroneous (1) for not expressly ruling that the retention by

the depositor without objection of the bank statements with the printed notation thereon constituted the series of statements an "account stated," and (2) for not ruling that the signed receipt constituted a contract between the bank and the depositor.

(1) It is true, as was stated in the opinion, that bank statements have been given effect as accounts stated by some courts and by this court under some circumstances. But an account stated is an agreement between debtor and creditor that the items of the transactions between them are correctly stated in a statement rendered, that the balance shown is owing by the one party to the other, and that the one promises to pay that balance to the other. 1 Corp. Jur. p. 678; 1 Words and Phrases (1st series) 93. If a depositor and his bank should expressly agree that a bank statement was correct, it would no doubt stand as an account stated and presumptively bind the bank to pay a balance shown to the depositor's credit or the depositor to pay an overdraft shown. The theory is that the debtor has admitted the debt and promised to pay it. The admission is usually express, and made upon the parties meeting and going over the items together. The admission of correctness and an implied agreement to pay may be presumed from retention for an unreasonable time without objection or explanation by the debtor on receipt of an itemized statement. 1 Corp. Jur. p. 691. But this presumption is open to explanation and may be rebutted. 1 Corp. Jur. p. 692. Here explanation was made by the plaintiff that rebutted the presumption of agreement by him that the account was correct and promises to pay were not involved from the nature of the statements and the circumstances. The principles of the "account stated" doctrine hardly apply to the situation. But if they do, as stated in the opinion, the account is still open to correction for mistake.

(2) The court did not hold that an agreement may not be made between a bank and a depositor of nature as shown by the recitals in the receipts signed by the plaintiff. We merely held that an agreement on the part of the depositor to such effect would not be presumed from the mere fact that the receipt for the returned checks signed by the depositor contained the language thereon printed, in the face of proof that the recital in the receipt was never called to the attention of the depositor and that the depositor had not noticed it and did not know of its presence in the receipt. If such an agreement is expressly made as condition of the bank's accepting an account when it is opened or is so made thereafter as condition of accepting further deposits, it may be that it would be upheld and would bind a depositor to the strict terms of the recital. Possibly, however, a bank would not be permitted on grounds of public policy to exempt itself from liability for the consequences of its negligence or from obligation to correct its errors merely because not notified thereof by the depositor within ten days from receipt of a statement. These are questions upon which there is here no occasion to express opinion. We are not unmindful that "It is well established that as a general rule a person is not permitted to repudiate a written obligation by saying when called upon to respond to it that he did not read it when he signed it or did not know what it contained," nor that "it has been held that this rule applies to what is in form a receipt if it also contains an assumption of a written obligation." See *Lefebvre v. Autoist Mut. Ins. Co.* 205 Wis. 115, 236 N. W. 684 (decided May 12, 1931), wherein the subject of the force of recitals in receipts was considered. There is a distinction between receipts, releases, and the like, unwittingly signed as mere receipts, and formal written instruments of purely contractual nature signed by parties intending by their signatures to enter into a contract and under-

standing that they are so doing. To apply the rule in all its strictness, it is essential that the transaction and circumstances involved raise the writing to the status of a contract. Here there was no transaction between the parties relative to the assumption of a contractual obligation by the plaintiff, and the circumstances clearly indicate that the plaintiff did not intend to assume and did not know that he ostensibly was assuming any contractual obligation. This precludes considering the recital on the receipts as constituting an agreement by which the plaintiff assumed contractual obligations as recited.

The decision of the instant case seems to have aroused undue excitement in banking circles, judging from the briefs filed *amicus curiæ*. The excitement apparently arises from realization of possible results of the application of long established rules, rather than the promulgation of any new doctrine. It may be that the old rule of holding banks to make good to the depositor the amount paid out on checks forged against his account is harder upon banks than it formerly was, in view of the multitude of present-day transactions and the difficulty of detecting forgeries in the hurry and stress incident to the conduct of business in large banks, but we cannot for that reason relax that rule or lay down new rules to avoid results of its application.

The motion for rehearing is denied, with $25 costs.