ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellant, v. THE LA CROSSE TRUST COMPANY, Respondent: Clark, Defendant.

*No. 4. Argued March 4, 1974.—Decided April 2, 1974.*
(Also reported in 216 N. W. 2d 218.)

[40] *Madison v. State* (1973), 61 Wis. 2d 333, 337, 212 N. W. 2d 150.

750

For the appellant there was a brief by *L. E. Sheehan* and *Moen, Sheehan & Meyer, Ltd.*, all of La Crosse, and oral argument by *L. E. Sheehan.*

For the respondent there was a brief by *Edwards, Hafner, McDonald & Becker, Ltd.*, and *Roger W. Hafner,* all of La Crosse, and oral argument by *Roger W. Hafner.*

CONNOR T. HANSEN, J.  Nora C. Clark and C. V. Clark, Jr., her son, lived in Viroqua, Wisconsin. The trial court made findings of fact which included the following, and none of which are seriously disputed, and which we find to be supported by sufficient credible evidence.

In November of 1962, C. V. Clark, Jr., by use of forged written request under the name of Nora C. Clark, obtained a loan from the bank on a vehicle owned by his mother. Subsequent to such loan, through the use of a forged written request and forged loan application, both in the name of Nora C. Clark, he obtained an increase in the existing loan.

Nora C. Clark had a post office box in Viroqua and C. V. Clark, Jr., had access to it. On or about July 2, 1963, C. V. Clark, Jr., intercepted a $500 check mailed to her by the defendant as proceeds of the trust funds. He forged her endorsement and negotiated the check at the bank. Also prior to August 30, 1963, he forged her name to a withdrawal request for $4,700 from the trust funds. In reliance on this letter and a subsequent telegram, the defendant made payment to Nora C. Clark, who, in fact endorsed and cashed the check.

As to each of the following described checks, C. V. Clark, Jr., forged the name of Nora C. Clark to a withdrawal request mailed to the defendant. In response to such request, the defendant mailed the checks payable to her to Viroqua. The checks were intercepted by C. V. Clark, Jr., at the post office and retained by him:

| October | 2, 1962 | $3,500.00 |
| December | 17, 1963 | 5,200.00 |
| February | 10, 1964 | 9,000.00 |
| March | 3, 1964 | 4,500.00 |
| March | 6, 1964 | 2,061.60 |

C. V. Clark, Jr., forged the endorsement of Nora C. Clark on each of these checks and, except as hereinafter stated, personally negotiated each of them at the bank

without further endorsement. The check for $3,500 had the additional endorsement of C. V. Clark, Jr. The $9,000 check was negotiated by mail with a letter upon which C. V. Clark, Jr., forged the signature of his mother.

The proceeds of the checks were applied in part to the payment of a loan at the bank he had obtained on the forged signature of his mother, money orders payable to his mother, various individual and corporate payees and part in cash. The remittitur on the money orders issued by the bank appears variously as Nora C. Clark, C. V. Clark, Jr., or Cee Vee Cee Enterprises, a business operated by C. V. Clark, Jr.

On January 21, 1964, C. V. Clark, Jr., sent a written request to the defendant bearing the forged signature of Nora C. Clark requesting liquidation of the trust assets and closing of the trust. Upon receipt of this request, the defendant began liquidation of the trust assets for the purpose of transmittal of the trust funds.

Thereafter, and on or about February 7, 1964, C. V. Clark, Jr., by means of a subterfuge, caused Nora C. Clark to sign and mail a letter to the defendant referring to returns on her stock and requesting the defendant to send her a check for "the funds you now have." C. V. Clark, Jr., drafted the letter for his mother and when she executed and mailed it, she was under the belief that it referred to income and returns on the stock held in trust.

The trial court also found that all of the acts of C. V. Clark, Jr., were without the consent, permission or knowledge of Nora C. Clark.

The record also contains testimony which reflects that Nora C. Clark previously established credit at the bank when she purchased an organ from a merchant who sold the contract of sale to the bank and which contract was paid as agreed. When C. V. Clark, Jr., went to the bank he usually dealt with the same teller at a drive-up window. The checks were cashed with the loan book and a loan

payment was deducted and the balance given to him in cash or money orders. Most of these money orders were used to pay off the debts of C. V. Clark, Jr. Although these checks were for large amounts, neither the teller nor any officer of the bank demanded identification, proof of signature, or the personal endorsement of C. V. Clark, Jr. The teller testified that failing to check the signature in these instances was not customary procedure and she should have checked the signature of the endorsement.

The record further reflects that C. V. Clark, Jr., never had an account at the bank. In 1955 or 1956, he forged checks at the bank which were payable to his father who was living at the time. He personally discussed the incident with the bank and criminal charges were brought. However, his father intervened and the charges were later dropped.

C. V. Clark, Jr., testified to an incident on a Friday when he had been drinking and attempted to cash a large check at the bank. His regular teller was not at the window and the girl on duty asked him to come into the bank. He spoke with an official of the bank who realized he had been drinking and was told the bank would not cash a check for such a large amount unless his mother was present. This was the only time the bank questioned his right to negotiate a check. He did not have the loan book with him at the time, but went back several days later and negotiated the check without difficulty. C. V. Clark, Jr., further testified that it was "so simple" to cash these checks it was "[j]ust like buying a dozen apples or so."

### Issues.

On appeal and at trial the plaintiff takes the position (1) that the defendant was negligent in not comparing the signatures on the withdrawal requests and the checks

and was thus the primary cause of the loss, and (2) the impostor doctrine is applicable to the facts of this case.

The trial court found that the negligence of the defendant was "slight in degree" in that it (a) failed to check the authenticity of the signature on the request for withdrawal from the trust funds, and (b) it failed to check the authenticity of the signature or endorsements on the checks they issued. The use of the word "slight" is of no significance in referring to the negligence of the defendant.

The findings further determined that the negligence of the bank was "gross in degree" in that it (a) failed to verify the authenticity of the requests presented with the forged checks, (b) failed to verify the validity and authenticity of the signature of Nora C. Clark, (c) failed to verify the authenticity of C. V. Clark, Jr., to obtain and receive cash, money orders and checks in behalf of Nora C. Clark, (d) paid cash in excess of the amount of the money orders and loan payments when the checks were presented by C. V. Clark, Jr., as apparent agent, and (e) failed to demand power of attorney or proof of agency from C. V. Clark, Jr.

We are of the opinion that the trial court correctly assessed the evidence before it in resolving the issue of negligence as it related to the bank, and the defendant, and we agree with its determination.

At least as far back as 1863, Wisconsin recognized that:

". . . It is well settled, that where notes are drawn payable to order, they cannot be transferred without the payee's endorsement, so as to cut off the equities between the original parties. The payee may sell or assign them, and the purchaser acquire an equitable title; but to cut off any defense, good as against the payee, the holder must acquire the legal title, and that, under the law merchant, can pass only by the payee's endorsement. But when the payee's endorsement is forged, no title whatever passes. . . ." *Terry v. Allis* (1863), 16 Wis.

504, 505 (*478, *480). *See also: Wussow v. Badger State Bank* (1931), 204 Wis. 467, 470, 471, 234 N. W. 720, 236 N. W. 687; *National Surety Corp. v. City Bank & Trust Co.* (1945), 248 Wis. 32, 34, 35, 20 N. W. 2d 559.

In the instant case, the plaintiff recognizes the general principle that ". . . no title to a check passes by virtue of a forged endorsement. . . ." However, the plaintiff suggests that the bank and the defendant are both innocent parties, and defendant should bear the loss because it was caused by defendant's failure to verify the withdrawal requests and the endorsements on the checks they issued as they were returned to the defendant. We do not consider this to be a correct statement of law.

Sec. 116.27, Stats. 1963, provided as follows:

"**Forgery.** Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

We deem the rationale of *Wussow v. Badger State Bank, supra,* to be controlling in the instant case. In *Wussow, supra,* an employee of the plaintiff, depositor, drew 392 forged checks, amounting to a total of about $16,000, on the depositor's account. They were cashed over an extended period of time. Ultimately, the depositor discovered the forgeries and recovered his loss from the bank. The bank contended that if the depositor had examined his returned checks with due care he would have discovered the forgeries and that had he reported them to the bank, it would have been saved from further losses. The trial court found the depositor negligent as a matter of law for not discovering the forgeries by examination and reporting them to the bank. The jury

found the bank negligent in paying them and judgment was entered for the depositor. "The bank's exemption from liability in such case is dependent on its own freedom from negligence." *Wussow, supra,* pages 471, 472. If the bank in the instant case was to be exempt from liability because of the defendant's negligence, it would have to affirmatively appear that the bank was not negligent. "It pays because on its own negligent inspection it supposed the checks were genuine." *Wussow, supra,* page 472. We agree with the trial court's conclusion of law that the defendant is not, by virtue of its negligence, precluded from setting up the forgery as a defense because of lack of reliance on any of its acts by the bank. The record is barren of any intimation that the bank had any contact with the defendant in regard to the Clark transactions. In our opinion the record adequately supports the finding of the trial court that the negligence of the bank was gross in degree.

The trial court refused to apply the impostor doctrine, stating that Wisconsin had never recognized this doctrine and therefore it would not consider it in this case. The trial court further determined that the impostor doctrine required that:

(a) The dealings between the impostor and his endorsee have uniformly been face to face.

(b) In some instances such second victim was a stranger to the instrument who merely purchased or cashed it upon the impostor's endorsement, while another such victim was the named drawee, but the courts have generally made no distinction between the two situations.

(c) The impostor has uniformly assumed the status of rightful holder as payee of the instrument.

Therefore, determined the trial court, except in the one instance when C. V. Clark, Jr., added his own endorsement after he forged the endorsement of his mother, there was no dual imposture inasmuch as the checks were presented by C. V. Clark, Jr., as the personal agent for

his mother. The bank obviously could not identify C. V. Clark, Jr., as Nora C. Clark, the payee and his mother. The trial court concluded that even if the impostor doctrine were to be recognized in Wisconsin, it would not be applicable in this case. We agree with the trial court's decision on the issue of the impostor doctrine.[1]

Wisconsin has never recognized the common-law impostor doctrine. We decline to do so in this case and, therefore, do not feel obliged to further consider the ramifications of the doctrine.[2] Furthermore, and without an exhaustive discussion of the doctrine, we are of the opinion it is not applicable to this case.

Finally, the plaintiff contends that if recovery is denied on the other checks issued by the defendant, it should recover on the check of $9,000 dated February 10, 1964. This contention is based upon the fact that C. V. Clark, Jr., negotiated this particular check at the bank by mail rather than in person. We deem this distinction to be of no consequence for several reasons. This is the one instance when the defendant did, in fact, receive a letter signed by Nora C. Clark concerning the dispersal of trust funds. The record is entirely void of any inference the defendant ever intended to deliver any of the checks to anyone other than Nora C. Clark. There is nothing to indicate or infer the defendant ever believed or intended to transact business with C. V. Clark, Jr., or that it believed him to be his mother.

---

[1] The negotiable instruments law, ch. 116, Wisconsin statutes 1963, as it existed in 1963 and 1964, is applicable to this case. The Uniform Commercial Code became effective July 1, 1965. Ch. 158, Laws of 1963. Therefore, in the disposition of this case we do not consider the provisions of the Uniform Commercial Code, and in particular sec. 403.405, Stats., Impostors; signature in name of payee.

[2] *See:* Annot. (1962), *Who must bear loss as between drawer or indorser who delivers check to an impostor and one who purchases, cashes, or pays it upon the impostor's indorsement.*, 81 A. L. R. 2d 1365. 10 Am. Jur. 2d, *Banks,* p. 606, sec. 638.

Also, we are of the opinion the negotiation of this check was a very definite part of the scheme developed by C. V. Clark, Jr., in negotiating all of these checks at the bank. We conclude that the circumstances surrounding the $9,000 check do not present a different issue.

*By the Court.*—Judgment affirmed.