W. J. THORESON, Plaintiff and Appellee,

v.

CITIZENS STATE BANK, RUGBY, NORTH DAKOTA, Defendant and Appellant,

and

Western State Bank, Devils Lake, North Dakota, Defendant.

Civ. 9748.

Supreme Court of North Dakota.

June 20, 1980.

McGee, Hankla, Backes & Wheeler, Minot, and Robert D. Hartl, Rugby, for plaintiff and appellee; argued by Orlin W. Backes, Minot.

Carlan J. Kraft, of McClintock, Butz & Kraft, Rugby, for defendant and appellant.

VANDE WALLE, Justice.

This is an appeal by the defendant Citizens State Bank of Rugby from an order of the Pierce County district court, entered on October 30, 1979, denying Citizens' motion for a new trial. We reverse and remand for further proceedings.

At all periods relevant to this case the Leeds Elevator, owned by W. J. Thoreson, maintained a checking account with Citizens on which account both Thoreson and the elevator's manager, Wayne Anderson, were authorized to write checks.

Between September 1974 and March 1975 Anderson's wife, Averill Anderson, without Wayne's knowledge, forged his signature on and uttered thirteen checks drawn on the Leeds Elevator checking account with Citizens. Averill cashed the first forged check, dated September 18, 1974, at the First National Bank of Devils Lake. The remaining twelve forged checks were cashed by Averill on various dates at the Western State Bank in Devils Lake. Averill testified that sometime "around" September 28, 1974, she opened a joint personal checking account at Western in the names of Wayne Anderson and Averill Anderson, without Wayne's knowledge. The proceeds of each of the forged checks which Averill thereafter cashed at Western were deposited in that joint account. The thirteen forged checks were transmitted through banking channels to Citizens for payment, and Citizens paid all thirteen checks, charging such payments against the Leeds Elevator account.

On a weekly basis Citizens submitted bank statements with canceled checks to the Leeds Elevator. Thoreson testified that he first discovered canceled checks forged by Averill during an audit conducted the "latter part of May or first part of June" 1975, and that he notified Citizens at that time. Thoreson then made a demand on Citizens to reinstate the funds charged against the Leeds Elevator account in pay-

ment of the forged checks. Citizens refused to reinstate the funds, and Thoreson filed an action against Citizens and Western seeking damages for the forged checks which were paid and charged against the Leeds Elevator account in the amount of $23,155, plus interest.

A trial was held before the Pierce County district court without a jury. The court determined that Thoreson failed to exercise reasonable care and promptness to discover and inform Citizens of the forged checks. However, the court also determined that Citizens was negligent in making payments on the thirteen forged checks and that, accordingly, Citizens was liable to Thoreson for the total amount of the thirteen forged checks. The court further determined that Western negligently cashed the twelve forged checks presented to it by Averill "without exercising proper diligence in ascertaining the genuineness of the signatures and the identity of its customers." The court concluded that Western was liable (jointly and severally with Citizens) to Thoreson for the amount of the twelve forged checks cashed by Western.

Judgment was entered against Citizens on the first forged check for $650 plus interest and against Citizens and Western, jointly and severally, on the remaining twelve forged checks in the amount of $22,075 plus interest.

Citizens filed a motion for a new trial, which was denied by the court's order dated October 30, 1979. Citizens now appeals to this court from the order denying its motion for a new trial, asserting that the trial court erred in its determination that Citizens failed to exercise ordinary care in making payment on the thirteen forged checks.

Pursuant to Section 41–04–28, N.D.C.C., a bank may charge against its customer's account any item which is "properly payable from that account . . ." Thus a bank is liable to its customer for any unauthorized payments which are charged against the customer's account. See Anderson, *Uniform Commercial Code* (2d Ed. 1971), Vol. 3, pp. 297–303; Annot., 18 A.L. R.3d 1376 at 1400 (1968). A bank is therefore strictly liable to its customer for unauthorized payments made on items not bearing the customer's valid signature or on items improperly endorsed or carrying a forged endorsement irrespective of whether the bank has exercised ordinary care or has acted in a commercially reasonable manner in paying the items.

However, the following provisions of subsections 1, 2, and 3 of Section 41–04–33, N.D.C.C., substantially affect the legal relationship between a bank and its customer and are relevant to the issues raised in this case:

"41–04–33. (4–406) *Customer's duty to discover and report unauthorized signature or alteration.*—

"1. When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

"2. If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection 1 the customer is precluded from asserting against the bank

"a. his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

"b. an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

"3. The preclusion under subsection 2 does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s)."

The trial court determined that the first four checks forged by Averill [check No. 1293, dated 9/18/74; check No. 1320, dated 9/18/74; check No. 1339, dated 9/28/74; and check No. 1365, dated 10/02/74] were paid by Citizens within fourteen days from the date the first forged check was available to Thoreson in one of the weekly bank statements. Citizens has conceded its liability to Thoreson on the first four checks forged by Averill [checks No. 1293, 1320, 1339, and 1365]. Accordingly, those four checks are not at issue on this appeal.

The trial court also determined that Thoreson did not act with reasonable care and promptness to discover and notify Citizens of the first forged checks enclosed in a weekly bank statement, and Thoreson has not disputed that finding by the trial court. Pursuant to subsection 3 of Section 41–04–33, N.D.C.C., a customer who fails to exercise reasonable care and promptness to discover and notify the bank of his unauthorized signature is precluded from asserting against the bank his unauthorized signature by the same wrongdoer on any subsequent items unless he establishes that the bank did not exercise ordinary care in making payment on the items. Because Thoreson did not act with reasonable care and promptness in discovering and notifying Citizens of his unauthorized signature on the first forged checks Thoreson had the burden of proof to establish that Citizens did not exercise ordinary care in paying each of the nine forged checks at issue on appeal.

In its memorandum opinion on the motion for a new trial the trial court stated, in relevant part:

"In the case at hand there was no testimony that only with the aid of the plaintiff [Thoreson] or his agent, his elevator manager, would the forgeries have been discovered.

"As in *Wussow* [*Wussow v. Badger State Bank of Milwaukee*, 204 Wis. 467, 234 N.W. 720 (1931)], this Court held in its original memo opinion and after reconsideration by reason of this motion does hold because there is no evidence that the forgeries could have been discovered only by aid of the plaintiff or his agent that Citizens did not exercise ordinary care in paying the checks. Further, thirteen checks bearing the endorsements as in this case should have aroused the suspicions of the payor bank. Mere proof of adherence to Citizens' internal control regulations does not prove freedom from negligence, nor the exercise of ordinary care."

The trial court determined that Citizens failed to exercise ordinary care in paying each of the thirteen forged checks and that Thoreson therefore was not precluded from asserting his unauthorized signature against Citizens. Consequently, the trial court held Citizens liable to Thoreson on all thirteen forged checks.

On appeal Citizens asserts that the trial court erred in its determination that Citizens failed to exercise ordinary care in paying the forged checks. The trial court's determination that Citizens failed to exercise ordinary care is a finding of fact which will not be set aside on appeal unless such finding is clearly erroneous. Rule 52(a), North Dakota Rules of Civil Procedure.

Each of the nine forged checks at issue on this appeal has Wayne Anderson's signature forged as drawer of the check by Averill Anderson. All nine checks are payable to the order of Wayne Anderson as payee; however, none of the checks is endorsed with Wayne Anderson's signature, either genuine or forged. In our determination of whether or not the trial court erred in finding that Citizens failed to exercise ordinary care in making payment on the forged checks we must scrutinize Citizens' payment of each check with respect to:

(1) the drawer's signature on the check, and

(2) the endorsement(s) on the check.

### DRAWER'S SIGNATURE

Each of the nine forged checks at issue on this appeal has Wayne Anderson's

signature forged as drawer of the check by Averill Anderson. The only testimony with regard to the quality of those forgeries was the deposition testimony of Alma Hale, assistant vice-president and cashier at Citizens, and Patsy Ferguson, assistant cashier at Citizens. Both witnesses testified that the six or seven employees of Citizens responsible for examining and filing all checks received by the bank for payment were instructed to compare the drawer's signature on the checks with that on the signature card and to also examine the date and the endorsements on the checks. Both witnesses also testified that the forged signatures of Wayne Anderson on all the checks, when compared with Wayne Anderson's signature card at the bank, would have passed as Wayne Anderson's genuine signature for purposes of Citizens' making payment on the checks. Claude Zweber, president of Citizens, testified by deposition that in his opinion Citizens' procedure for examining and filing checks was the standard procedure followed by all other banks in the area. There is no expert testimony with respect to the quality of the forgeries nor is there any other evidence, in addition to the testimony of Zweber, with respect to whether or not such forgeries would have passed as genuine signatures under reasonable banking practices.

Pursuant to subsection 3 of Section 41–04–33, N.D.C.C., Thoreson had the burden of proving that Citizens failed to exercise ordinary care in making payment on the forged checks.[1] See *Nu-Way Services, Inc. v. Mercantile Trust Co. Nat. Assoc.*, 530 S.W.2d 743 (Mo.App.1975). Subsection 3 of Section 41–04–03, N.D.C.C., provides the following partial definition of "ordinary care":

"3. Action or nonaction approved by this chapter or pursuant to Federal Reserve regulations or operating letters constitutes the exercise of ordinary care and, in the absence of special instructions, action or nonaction consistent with clearinghouse rules and the like or with a general banking usage not disapproved by this chapter, prima facie constitutes the exercise of ordinary care."

There is no evidence in the record regarding Federal Reserve regulations or clearinghouse rules, and the only evidence of "general banking usage" is Zweber's deposition testimony that Citizens' procedure for examining and filing checks was the standard procedure followed by all other banks in the area.

In *Mercantile Trust Co., supra*, Nu-Way Services, Inc., sued Mercantile to recover charges it made against Nu-Way's account on 43 forged and six altered checks. One of Nu-Way's employees had taken 43 blank checks from Nu-Way's checkbook and, after making himself payee on each of the checks, had forged the signature of Nu-Way's president as drawer on each of the checks. Each of the checks was paid by Mercantile and returned to Nu-Way along with an itemized statement of account at the end of each month in which the checks were cashed.

The Missouri Court of Appeals determined that Nu-Way had failed to exercise reasonable care and promptness to discover and notify Mercantile of the unauthorized signatures. The appeals court further determined that, under Section 400.4–406(3), R.S.Mo.1969,[2] "the burden of establishing Mercantile's lack of ordinary care rests

---

1. In its memorandum opinion on the motion for a new trial the trial court correctly stated that Thoreson had the burden of establishing Citizens' failure to exercise ordinary care. Nevertheless, the trial court subsequently held that Citizens did not exercise ordinary care in paying the checks "because there is no evidence that the forgeries could have been discovered only by aid of the plaintiff or his agent . . ." The trial court also stated in its memorandum opinion, "Mere proof of adherence to Citizens' internal control regulations does not prove

freedom from negligence, nor the exercise of ordinary care." In view of the foregoing statements made by the trial court it is doubtful that the court properly placed the burden on Thoreson to prove Citizens' lack of ordinary care pursuant to subsection 3 of Section 41–04–33, N.D.C.C.

2. Section 400.4–406(3), R.S.Mo.1969, is substantively identical to subsection 3 of Section 41–04–33, N.D.C.C.

staunchly on Nu-Way." 530 S.W.2d at 746. In determining that Nu-Way had failed to meet its burden the appeals court stated:

"We have only before us evidence of the method applied by Mercantile in processing Nu-Way's checks. There was no evidence presented by Nu-Way of any other methods employed by other banking institutions. On the record which we review we cannot rule that Mercantile lacked ordinary care in processing Nu-Way's checks. . . .

. . . . .

"The record contains no references to Federal Reserve regulation or clearing house rules, and the only evidence of 'general banking usage' came from Mercantile which described the system administered by it as being in general banking usage. . . . By Nu-Way's failure to review its own bank statements when supplied by Mercantile, it had the burden under § 400.4–406(3) to establish lack of ordinary care by Mercantile. On the record before us we conclude that Nu-Way failed to meet its burden as to the 43 forged checks." 530 S.W.2d at 748.

In the instant case, as in *Mercantile Trust Co., supra,* there is insufficient evidence in the record to support a finding that Citizens failed to exercise ordinary care in accepting the forged signatures as genuine signatures of the drawer for making payment on the checks. Consequently, Citizens' acceptance of the forged signatures as Wayne Anderson's genuine signatures provides no basis upon which to hold Citizens liable to Thoreson for payment on the forged checks.

### ENDORSEMENTS

█ Five of the nine checks at issue on appeal [check No. 1324, dated 10/14/74; check No. 1331, dated 10/18/74; check No. 1693, dated 1/24/75; check No. 2005, dated 2/28/75; and check No. 2007, dated 3/03/75], although having no signature endorsement of the payee, Wayne Anderson, contain a statement stamped on the back of each check by Western that the check was deposited for credit to Wayne Anderson's

account and also stating, "absence of endorsement guaranteed."

Subsection 1 of Section 41–04–15, N.D. C.C., provides:

"41–04–15. (4–205) *Supplying missing endorsement*—No notice from prior endorsement.—1. A depositary bank which has taken an item for collection may supply any endorsement of the customer which is necessary to title unless the item contains the words 'payee's endorsement required' or the like. In the absence of such a requirement *a statement placed on the item by the depositary bank to the effect that the item was deposited by a customer or credited to his account is effective as the customer's endorsement.*" [Emphasis added.]

The objective of Section 4–205, U.C.C. [§ 41–04–15, N.D.C.C.], is explained by Anderson, *Uniform Commercial Code* (2d Ed. 1971), Vol. 3, p. 225, as follows:

"As part of its objective of expediting bank collections, the Code recognizes the common practice of accepting unindorsed checks for deposit and authorizes a collecting bank to supply missing indorsements as a matter of course. In practice, a bank complies with Code § 4–205 by stamping the item 'deposited to the account of the named payee' or some similar formula.

. . . . .

". . . Assuming the absence of any provision requiring the customer's own indorsement, a notation made by the depository bank on the item itself that the item was deposited by the customer or was credited to his account is effective as an indorsement of the customer.

"Under Code § 4–205, a check is deemed indorsed when a depositary bank states on the check that it was deposited by the customer or credited to his account." [Footnotes omitted.]

Alma Hale, vice-president and cashier at Citizens, testified that Western's statement on each of the five checks to the effect that the check was deposited or credited to Wayne Anderson's account constituted a

satisfactory endorsement which employees at Citizens were instructed to accept in making payment on a check. There is no testimony or other evidence in the record that the acceptance of checks endorsed in this manner would constitute lack of ordinary care by a payor bank. Although the trial court stated in its memorandum opinion that " . . . thirteen checks bearing the endorsements as in this case should have aroused the suspicions of the payor bank," there is no additional finding of fact or explanation by the trial court as to why Citizens' acceptance of the endorsements on these five checks would constitute failure to exercise ordinary care. We conclude that the trial court's determination that Citizens failed to exercise ordinary care in payment of these five forged checks [checks No. 1324, 1331, 1693, 2005, and 2007] was clearly erroneous. Accordingly, Citizens is entitled to a new trial on the issue of its liability to Thoreson on these five checks.

▮ Four of the nine forged checks at issue on appeal [check No. 1416, dated 11/02/74; check No. 1414, dated 11/08/74; check No. 1425, dated 11/19/74; and check No. 1518, dated 1/18/75] carried neither the endorsement of the payee, Wayne Anderson, genuine or forged, nor a statement by Western to the effect that the checks were deposited or credited to Wayne Anderson's account. Both Alma Hale and Patsy Ferguson testified that these four checks, having no endorsement or statement of deposit by Western, would not meet the endorsement requirements of Citizens for payment of checks and that such checks should have been returned to Western by Citizens. Zweber, president of Citizens, also testified that these four checks did not meet the endorsement requirements under Citizens' procedures for making payment on checks. There is no other evidence in the record as to what would constitute ordinary care or reasonable banking practices by a payor bank for examining endorsements on checks presented for payment. We believe the foregoing testimony of Citizens' personnel supports the trial court's determination that Citizens did not exercise ordinary care in making payment on these four forged

checks [checks No. 1416, 1414, 1425, and 1518]. On the record before us we cannot say that the trial court's determination that Citizens failed to exercise ordinary care in making payment on these four forged checks was clearly erroneous, and therefore such determination will not be set aside.

Citizens' appeal in this case is from the trial court's order denying Citizens' motion for a new trial. No appeal was taken from the judgment itself. We therefore reverse the trial court's order denying the motion for a new trial and remand the case for a new trial with regard to the issue of Citizens' liability on only the following five checks: No. 1324, No. 1331, No. 1693, No. 2005, and No. 2007.

SAND and PAULSON, JJ., and GLASER, District Judge, concur.

GLASER, District Judge, sitting in stead of ERICKSTAD, C. J., disqualified.

PEDERSON, Acting Chief Justice, concurring and dissenting.

I concur with the reversal and remand insofar as it relates to checks 1324, 1331, 1693, 2005 and 2007. I dissent because I think that Citizens State Bank is entitled to a new trial as to all the checks except those on which it is strictly liable, which was conceded on this appeal.

Thoreson has set up a straw man by diverting the court's attention to the endorsement argument. The sole issue, as I view it, relates to the forgery. Whether or not a finding on the endorsement question is clearly erroneous is immaterial.

I do not understand Citizens State Bank's strategy in not appealing from the judgment. In my opinion, when you have no appeal from a judgment, you have no reason to consider Rule 52(a), NDRCivP. Because an error was committed which, under the circumstances, cannot be corrected by a reversal of the judgment, a new trial should be granted.