Leonard H. Sandler, J.
Plaintiff, Mortimer Agency, Inc. (Mortimer), depositor in Underwriters Trust Company (Underwriters), sues to recover $4,000 paid out by Underwriters on a forged check. Underwriters resists the action on the claim that Mortimer’s negligence contributed to the success of the forgery. In addition, Underwriters has impleaded Chemical Bank (Chemical) and Rego Trading Corp. (Rego) asserting that the name of the payee was also forged, and that Chemical as thé collecting bank and Rego as a purchaser of the check violated their respective warranties with regard to the forged indorsements of the payee, and should be held ultimately responsible if Underwriters is found liable in the original action.
The basic facts are as follows.
On March 24, 1971, a certain individual presented to Underwriters for certification a check for $4,000 drawn on the Mortimer account, dated March 23,1971, made payable to Krynlon Real Estate Inc., and bearing the apparent signature of Mortimer’s principal and authorized signatory, M. G-. Schwartzbarth. A note on the check stated that it was in full settlement of a certain fire claim.
*971 The individual also submitted a letter which requested that the check be certified. This letter was on the letterhead of M. G. Schwartzbarth, the words Mortimer Agency, Inc. were typed over the printed head, and the letter was apparently signed on behalf of Mortimer by Schwartzbarth.
In fact the purported signatures on the check and letter were not written by Schwartzbarth, but had been affixed by a rubber stamp used in other aspects of the business but never on checks, and concededly not authorized for use on checks.
The check was certified by Underwriters, and thereafter was submitted for negotiation by one Vincent Mac Falta to Rego, whose principal described Regó’s business as the purchase of third-party paper. After certain inquiries, which in part are the subject of factual dispute, Rego bought the check, gave the cash to Mac Falta, and deposited the check for collection with its bank, Chemical. In turn Chemical forwarded the check for collection to Underwriters which remitted the money and charged Mortimer’s account.
When Mortimer received its bank statement disclosing both the certification of the check and the subsequent charging of the account, it promptly informed Underwriters that the signature was in fact a forgery. Investigation disclosed that Mortimer had been the victim of a series of burglaries, and that in all probability the forgery was consummated during one such nocturnal visit when checks were removed from the back of its check book, the letter was typed, and the rubber stamp was affixed to the check and letter.
Turning to the original action against Underwriters, the right of Mortimer to recover seems relatively free from doubt.
The principle is of course long established, and frankly acknowledged by Underwriters, that a bank may pay out and charge to its depositor only such sums as are duly authorized. (Morgan v. United States Mtge. & Trust Co., 208 N. Y. 218, 222 [1913]; Uniform Commercial Code, § 3-404.)
Underwriters seeks to escape liability on the basis of the familiar exception that applies when payment on the forged instrument has been contributed to by the negligence of the depositor and the bank itself has been free from negligence. (Morgan, supra; Uniform Commercial Code, § 3-406.) However the evidence does not sustain either part of the claimed exception.
I cannot agree that Mortimer was negligent in failing to appreciate the complicated scheme which had been set in motion during one of the burglaries in view of the. fact that the blank *972 check was removed from a distant section of the check book, which was otherwise left undisturbed, and the rubber stamp was found in its accustomed place. Nor do I find such an inadequacy in the security precautions used by Mortimer even under the circumstances of repeated burglaries as to justify an inference of negligence.
On the contrary, the negligence of Underwriters is quite clearly established by the evidence. No doubt, it is easier to perceive the use of a rubber stamp after one’s attention has been invited to the possibility, but in this case, the stamp had been affixed in such a way as to present physical indicia of its use sufficient to have alerted Underwriters to the need for further inquiry. When the physical appearance of the signature is considered together with the suspicious appearance of the accompanying letter, the typed misspelling of the signatory’s name on the letter, and the exceptionally large amount of the check in relation to the usual pattern, I cannot agree that the certification of the check without further inquiries represented the exercise of adequate care.
As to Underwriters’ further claim that Mortimer ratified the check in question, based upon testimony by Rego’s principal of a telephone conversation in which he was assured that the check was authentic, I find it inconceivable that Mortimer ever gave such assurance to anyone about a check that was a blatant forgery and a theft of a large part of its funds.
Accordingly, Mortimer is clearly entitled to a judgment against Underwriters in the amount sued for.
Underwriters’ third-party action against Regó and Chemical presents more troublesome questions both factually and legally.
Preliminarily, the third-party action rests upon the factual proposition that the payee’s name was also forged, as to which the record presents an anomalous situation. No admissible evidence was adduced directly establishing that forgery, although the circumstances point inescapably to that conclusion.
If a determination that the payee’s name was also forged would alter the result of the case, I would have been inclined to reopen the case to permit additional evidence. After a careful analysis of the available legal authorities, I have concluded that the third-party action could not be sustained even if the forgery of the payee’s name were accepted as factual, which I indeed believe it to be.
The problem is best approached in terms of two well-established principles of law, both of which have been accepted and renewed in the Uniform Commercial Code.
*973 First, a drawee who accepts or pays an instrument on which the signature of the drawer is forged is bound on its acceptance and cannot recover back its payment. This rule, first set forth in Price v. Neal (3 Burr. 1354 [1762]), is followed in section 3-418 of the Uniform Commercial Code and inferentially in section 3-417 (subd. [1], par. [b]) and section 4-207 (subd. [1], par. [b]) of the Uniform Commercial Code.
Second, any person who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that all previous endorsements are authentic. This principle has been followed in section 3-417 (subd. [1], par. [a]) of the Uniform Commercial Code and its equivalent section in Article 4 (§ A-207, subd. [1], par. [a]) of the Uniform Commercial Code.
The issue presented here on a finding that the payee’s signature was forged would be the legal consequences of a situation in which money is paid out by a drawee bank on a check on which the signatures of both drawer and payee are forged. Apart from the special question presented as to the good faith and reasonable care of Rego, its legal position as against the • third-party action is substantially the same as Chemical.
Reported cases dealing squarely with this problem are few in number, and consistently fix responsibility on the drawee bank. (First Nat. Bank v. United States Nat. Bank, 100 Ore. 264 [1921]; United States v. Chase Nat. Bank, 252 U. S. 485 [1920].)
The most thoughtful and illuminating discussion appears in First Nat. Bank {supra). Following a comprehensive review of the law, the court rested its decision against the drawee bank on the following two points:
First: ‘ ‘ The checks were never at any time valid subsisting orders; they were not orders originally valid but subsequently unlawfully changed by the addition of an invalid incident. The checks involved here as well as all their incidents were invalid from the very beginning.” (p. 294).
Second: “ The forged indorsement * * * put the plaintiff in no worse position than it would be left if the indorsements were genuine.” (p. 295).
I confess that neither of these assigned reasons seems very compelling to me. More persuasive is the rationale for the Price v. Neal rule as outlined in the official comment to section 3-418 of the Uniform Commercial Code, which points to the advantage of giving finality to a transaction when the instrument is paid, in preference to reopening and upsetting a series of commercial transactions at a later date.
*974 In any event, I see no reason to depart from the rule which has been adopted in the few decisions deciding the question, and which has received the sanction of the United States Supreme Court.
Moreover, the instant case presents a particularly strong case for placing liability on the drawee bank since it not only paid out on a forged signature but by its act of certification set in motion the whole series of events which made possible the success of the criminal endeavor.
A separate question is presented as to Rego by the argument that it did not act in good faith or with reasonable care in negotiating the check.
As to that point, the evidence discloses that Mac Falta had been recommended to Rego by one whom he had adequate reasons to trust, and that Mac Falta exhibited varied documents establishing his identity and apparently confirming his authority to act for the supposed payee. Undoubtedly, the certification of the check added to the appearance of authenticity.
Although the matter is by no means as clear as I would like, I have concluded that Rego did act in good faith and with reasonable care under the circumstances.
Accordingly, I need not resolve the further question of responsibility that would arise from a factual finding that both Rego and Underwriters were negligent.
Judgment is to be entered for Mortimer against Underwriters with interest as prayed for, and the third-party action against Chemical and Rego is dismissed.