OPINION OF THE COURT
Herman Cahn, J.
New York City is the financial capital of the United States, and probably of the world. As such, its traders and banking institutions are often faced with problems caused by commercial practices of foreign countries, which are radically different from and impact on our usages. In the instant case, the problems inherent in a less-than-free currency market in the Dominican Republic, gave rise to transactions which are the subject of this action.
Defendants move for summary judgment pursuant to CPLR 3212 on the grounds that the causes of action set forth have no merit and present no triable issues of fact. Plaintiff opposes and cross-moves for the same relief.
Defendants are partners engaged in the textile business, under the firm name of Collado Ozamiz Company (Collado). Plaintiff is a Brazilian bank, authorized to do business in New York. Its New York agency office is in New York County. The checks which form the basis of this action were thought to be drawn on plaintiff’s New York agency and were presented to and paid by said agency.
In September, 1980, Collado obtained two checks totaling $21,500.20 from Sedereas California, of Santo Dom *518 inga, the Dominican Republic (Sedereas California). Sedereas California was a customer of Collado and had maintained an open account with the defendants. At the time of receipt of said checks, Sedereas California had an outstanding balance due Collado, of approximately $78,000. One check was payable to one Manuel G. Morales in the amount of $10,500.20, while the second check was payable to Rafael Jimenez Morales in the amount of $11,000. Both checks were dated September 3, 1980 and drawn on plaintiff.
The checks were apparently purchased on the “parallel” or “black market” from Servicios Dominicanos C. por A. by Sedereas California. Servicios Dominicanos C. por A. is a foreign exchange dealer in the Dominican Republic. In the Dominican Republic, all foreign currency obtained in any transaction is required to be converted to the national currency at the official exchange rate set by the Central Bank in the Dominican Republic. All bank deposits of foreign currency must receive the prior approval of the Central Bank. From the affidavits submitted herein, it appears that the exchange control laws of the Dominican Republic do not permit the purchase of foreign currency from the Central Bank for the importation of certain types of goods. Therefore, it is not unusual that foreign funds are purchased on the parallel exchange market by importers and others unable to obtain foreign exchange through official channels. The checks in issue herein bore the stamped indorsement of' Servicios Dominicanos, the stamped indorsement of a certain Economisa Internacional and each check respectively was indorsed by the named payee. Sedereas California did not indorse either check.
Upon delivery of said checks to Collado, which checks were obtained “on consignment” from Sedereas California, defendants indorsed them and deposited them in their account in Citibank. The account of Sedereas California was thereafter credited with $21,500.20. These checks were transmitted through the clearing system to plaintiff’s New York agency which paid full value for the checks on or about September 30,1980. The checks were stamped by the plaintiff with the letters “P.E.G.”, which words mean “prior endorsements guaranteed” on the back and “Signa *519 turc Verified” on the front. On November 20,1980 plaintiff discovered that the checks were forgeries and immediately notified Collado and Citibank of such facts and demanded the return of its funds. Defendants obviously refused to comply with such demand.
It is unclear whether Collado shipped goods to Sedereas California after receipt of advice from its bank that the subject checks had cleared; although it does in fact claim that it extended further credit to this same customer.
Four causes of action are alleged in the complaint. The first is based on section 3-417 of the Uniform Commercial Code and alleges that Collado breached its indorser’s warranty. The second cause of action seeks damages upon the grounds of misrepresentation since the checks were deposited for collection with the knowledge that they were taken on consignment and possibly forgeries. The third cause of action alleges conversion and unjust enrichment is the basis of the fourth cause of action.
Collado alleges in support of its argument on the within motion that it was a holder in due course of the instrument pursuant to section 3-302 of the Uniform Commercial Code, having taken the instrument for value without notice that it was overdue or that there were any defenses to its payment. Moreover, defendant argues that it was discharged from liability by plaintiff’s failure to return the dishonored checks within a reasonable time in accord with section 3-502 (subd [1], par [a]) of the Uniform Commercial Code. Defendant’s final argument is that under the final payment rule of section 4-213 of the Uniform Commercial Code, plaintiff could not revoke payment, having made a final payment.
Defendant’s argument that it is a holder in due course is based on section 3-302 of the Uniform Commercial Code. It contends that having taken the instruments for value, in good faith and without notice of any claims or defenses against it, it is entitled to the protection afforded a holder in due course. It is clear that a payee may be a holder in due course. (Uniform Commercial Code, § 3-302, subd [2]; Saale v Interstate Steel Co., 27 AD2d 1.)
Plaintiff argues that defendant is not a holder in due course. Firstly, it argues that plaintiff did not in fact give *520 value for the checks in question. That defendants gave “value”, as that term is defined when it credited Sedereas California’s account is clear. Value is given by a holder when “he takes the instrument in payment of or as security for an antecedent claim.” (Uniform Commercial Code, § 3303, subd [b]; Marine Midland Bank-N. Y. v Graybar Elec. Co., 41 NY2d 703; Factory & Mill Supply Co. v Waller Constr. Corp., 44 Misc 2d 802.)
More significantly, plaintiff contends that defendant had knowledge that the checks were spurious and so had notice or acted in bad faith. Plaintiff points to several facts to support this claim. It points out that the checks were third-party checks taken on consignment, that defendant neither extended credit nor shipped further merchandise until after the checks had cleared; that the checks were not indorsed by Sedereas California, defendant’s client, and that finally, the checks were obtained on the Dominican Republic black market. All of these facts, plaintiff argues, are significant and constitute implicit knowledge by defendants of the spurious nature of the checks.
Good faith is defined as “honesty in fact in the conduct or transaction concerned”. (Uniform Commercial Code, § 1-201, subd [19].) If defendants “did not have actual knowledge of some fact which would prevent a commercially honest individual from taking up the instruments, then its good faith was sufficiently shown (see 1955 Report of NY Law Rev Comm, vol 2, pp 906-907).” (Chemical Bank of Rochester v Haskell, 51 NY2d 85, 92.)
With respect to the requirement that defendant take the checks without notice of any claim or defense to qualify as a holder in due course, subdivision (7) of section 3-304 of the Uniform Commercial Code states: “In any event, to constitute notice of a claim or defense, the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith.”
In Chemical Bank of Rochester v Haskell (supra, pp 92-93), in a discussion of this provision, the court stated: “It is important to note that this subdivision speaks in terms of ‘knowledge’ and not the ‘reason to know’ language used in subdivision (3) of the same section. This is a meaningful *521 distinction because ‘knowledge’ under the code means ‘actual knowledge’ (Uniform Commercial Code, § 1-201, subd [25]). Moreover, subdivision (7) of section 3-304 was added by New York to the 1962 Official Text of the code in order to make clear that the subjective test, applicable in this State even before the enactment of the code was intended to be continued (1962 Supp Report on the Uniform Commercial Code, NY Comm on Uniform State Laws, pp 6-7; see Hall v Bank of Blasdell, 306 NY 336).”
Thus, it is clear that unless Collado can be shown to have had actual knowledge of the fact that the checks were spurious, its rights as a holder in due course cannot be defeated. Defendant was “ ‘not bound * * * to be * * * alert for circumstances which might possibly excite the suspicions of wary vigilance.’ ” (Hall v Bank of Blasdell, 306 NY 336, 341, supra.) Therefore, plaintiff’s protests that defendant “should have known” that the checks were forgeries from all of the underlying suspicious circumstances, are insufficient and fail to raise triable issues of fact with respect to defendant’s status as a holder in due course.
Plaintiff argues that defendants have incurred the liability of an indorser pursuant to section 3-417 of the Uniform Commercial Code, having breached the warranties provided therein. However, section 3-417 (subd [1], par [b], cl [ii]) provides:
“(1) Any person who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that * * *
“(b) he has no knowledge that the signature of the maker or drawer is unauthorized, except that this warranty is not given by a holder in due course acting in good faith * * *
“to a drawer with respect to the drawer’s own signature, whether or not the drawer is also the drawee”.
Moreover, each of the forged checks, after being taken up by plaintiff were specifically marked “P.E.G.”, or “prior endorsements guaranteed”. Plaintiff’s first and second causes of action alleged in the complaint are therefore dismissed.
In this case, plaintiff finds itself in the doubly unenviable situation of not only having paid checks over forged *522 indorsements, but having paid checks with forged drawer’s signatures. Thus, the checks were forgeries from the very beginning, never at any time being valid orders. The law is clear that: “a drawee who accepts or pays an instrument on which the signature of the drawer is forged is bound on its acceptance and cannot recover back its payment. This rule, first set forth in Price v. Neal (3 Burr. 1354 [1762]), is followed in section 3-418 of the-Uniform Commercial Code and inferentially in section 3-417 (subd. [1], par. [b]) and section 4-207 (subd. [1], par. [b]) of the Uniform Commercial Code.” (Mortimer Agency v Underwriters Trust Co., 73 Misc 2d 970, 973.) The policy behind this rule is clearly set forth in Marine Midland Bank v Umber (96 Misc 2d 835, 838): “The narrowly circumscribed rights of a payor bank to recover its payment of a check with a forged drawer’s signature are the result of a policy decision traditionally anchored in the presumption that the payor bank knows (or should know) the signature of its customer, the drawer (Official Comment 4, McKinney’s Cons Laws of NY, Book 621/2, Uniform Commercial Code, § 3-417, p 356), and, therefore, is in a superior position to detect a forgery before making payment. A further justification for the payor bank’s limited rights is that it is highly desirable to end the transaction on an instrument when it is paid rather than to reopen and upset a series of commercial transactions at a later date when the forgery is discovered (Official Comment 1, McKinney’s Cons Laws of NY, Book 621/2, Uniform Commercial Code, § 3-417, p 356). Thus, the Legislature has determined that the risk of loss with respect to an instrument with a forged drawer’s signature generally should lie with the payor bank once payment has been made, and as such, is a cost incident to doing business as a bank.” (See, also, Uniform Commercial Code, § 3-418.) The checks involved herein purport to be plaintiff’s checks; that is they appeared to be bank checks. Plaintiff was, therefore, in the position to verify their authenticity before paying them. On these facts it is clear that it is plaintiff not defendants who must bear the loss.
By its third cause of action, plaintiff alleges conversion of the proceeds of the check. Plaintiff, however, fails to set forth a cause of action for conversion recognized under *523 section 3-419 of the Uniform Commercial Code. In accord with section 1-103 of the Uniform Commercial Code, general principles of law and equity supplement the code provisions unless displaced by a particular provision. Plaintiff’s cause of action in conversion fails to fit into any of the categories of section 3-419 of the Uniform Commercial Code, and therefore, is dismissed.
By its fourth cause of action, plaintiff alleges a cause of action in unjust enrichment. This cause of action is similarly stricken. Plaintiff may not recover in unjust enrichment when it is foreclosed from recovery by specific code provisions. (Uniform Commercial Code, §§ 3-417, 3-418; Marine Midland Bank v Umber, supra; Mortimer Agency v Underwriters Trust Co., supra.)
The court has found no issues of fact which are left unresolved. Therefore, summary judgment is appropriate.
Defendants’ motion for summary judgment is granted. Plaintiff’s motion for summary judgment is denied.