OPINION OF THE COURT
Carol R. Edmead, J.
Defendant Fleet Bank (Fleet) moves for an order granting it *21 summary judgment dismissing plaintiff Interbank of New York’s (Interbank) complaint. This case of first impression considers whether a notation “verbally authorized by your depositor” qualifies as a signature on a check.
Interbank commenced this action against Fleet to recover on four drafts in the total sum of $3,361.16, paid out by Interbank from the account of its customer, Dimitidos Tasoulis (Tasoulis).
Two of the drafts were issued by and made payable to Sprint PCS (Sprint), and two of the drafts were issued by and made payable to Bell Atlantic Mobile, Inc. (Bell).
These drafts are known commonly in the banking industry as “pre-authorized drafts” or “telechecks.” These drafts are created when a consumer has agreed to pay for goods or services by allowing the subject vendor to prepare and issue a preauthorized check drawn on the consumer’s account at the consumer’s designated financial institution. The consumer provides the vendor with the necessary account number and bank at which it is maintained, and the vendor then issues a check drawn on the consumer’s account.
In this case, Sprint and Bell issued drafts on the account of Tasoulis to pay for telephone services. The drafts contained the typed notation “verbally authorized by your depositor.” Bell and Sprint deposited the drafts in their respective accounts at Fleet.* The drafts were ultimately paid by Interbank.
Thereafter, Tasoulis advised Interbank that he never authorized Bell or Sprint to issue the drafts. Tasoulis executed an affidavit of forgery with respect to each draft, in which he stated that he had never authorized the drafts to be issued. Interbank seeks to recover on the forged drafts.
*22 It is Fleet’s position that the pre-authorized checks herein should be treated like any other check, and that in accordance with the Uniform Commercial Code, a depository bank such as Fleet cannot be liable for accepting a check on which the signature of the drawer is forged, unless it knew that the signature was forged.
Interbank’s position is that a pre-authorized check cannot be treated as an ordinary check and is not a negotiable instrument.
Fleet is the depository bank and collecting bank. (UCC 4-105 [a] , [d].) Interbank is the drawee and payor bank. (UCC 4-105 [b] .)
“First, a drawee who accepts or pays an instrument on which the signature of a drawer is forged is bound on its acceptance and cannot recover back its payment. This rule, first set forth in Price v. Neal (3 Burr. 1354 [1762]), is followed in section 3-418 of the Uniform Commercial Code and inferentially in section 3-417 (subd. [1], par. [b]) and section 4-207 (subd. [1], par. [b]) of the Uniform Commercial Code.” (Mortimer Agency v Underwriters Trust Co., 73 Misc 2d 970, 973 [Civ Ct, NY County 1973]; Banco Mercantil de Sao Paulo v Nava, 120 Misc 2d 517 [Sup Ct, NY County 1983].)
A forgery is an unauthorized signature (UCC 1-201 [43]), and is “wholly inoperative as that of the person whose name is signed.” (UCC 3-404 [1].)
Thus, it is Interbank, the drawee and payor bank, who is liable for the forged signature of its customer, the drawer.
“The provisions of article 3 of the Uniform Commercial Code relating to check fraud have as their purpose ensuring the ready negotiability of commercial paper and advancing the important policy of assigning loss based upon the relative responsibility of the parties * * * Article 3 accomplishes these ends by establishing commercially sound rules designed to place the risk of loss attributable to fraud such as forged indorsements with the party best able to prevent them.” (Getty Petroleum Corp. v American Express Travel Related Servs. Co., 90 NY2d 322, 326 [1997] [citations omitted].)
The reasons for the rule that a drawee who pays an instrument on which the signature of the drawer is forged cannot recover back the payment is stated in Comment 1 of UCC 3-418 as follows:
*23 “The traditional justification for the result is that the drawee is in a superior position to detect a forgery because he has the maker’s signature and is expected to know and compare it; a less fictional rationalization is that it is highly desirable to end the transaction on an instrument when it is paid rather than reopen and upset a series of commercial transactions at a later date when the forgery is discovered.”
Section 3-104 (1) (a) of the UCC provides that for a writing to be a negotiable instrument it must be signed by the maker or the drawer. Interbank argues that since the subject drafts are not signed by the maker, but merely contain the notation “verbally authorized by your depositor,” the subject drafts do not constitute negotiable instruments.
UCC 1-201 (39) provides that “signed” includes any symbol executed or adopted by a party with a present intention to authenticate a writing. UCC 3-401 (2) provides that a signature is made by any word or mark used in lieu of a written signature.
In accordance with the above-noted sections of the UCC, if a drawer or maker intended the notation “verbally authorized by your depositor” to authenticate the check and intended that the notation take the place of a written signature, then the check would be a negotiable instrument.
Clearly, if Tasoulis had authorized Bell to issue the check with the notation “verbally authorized by your depositor,” in place of his written signature, the check would qualify as a negotiable instrument. The only infirmity in the subject drafts is that Tasoulis did not authorize their issuance. Thus, the notation “verbally authorized by your depositor,” which could constitute a signature under the UCC, is unauthorized.
In Iselin & Co. v Fireman’s Fund Ins. Co. (117 AD2d 86 [1st Dept 1986], mod on dissenting opn 69 NY2d 908 [1987]), every bill of lading bore the printed stamped signature of “Lawson Trucking Co., Inc., J. Lawson President.” At his deposition, Jordan Lawson testified that he had never authorized anyone to purchase the stamp or to use it. The majority held that defendant’s claim that the documents were not forged as to signature since they contained a stamped printed signature and not a facsimile handwritten signature was without merit. The unauthorized use of a stamped printed signature constituted a forged signature. The dissent agreed with the majority that the unauthorized use of the stamp constituted a forged *24 signature. However, the dissent held that it could not be concluded, wholly without regard to the stamped signatures, whether the documents were “counterfeited” within the meaning of the insurance policy. The Court of Appeals modified based on the dissent.
It is clear from the above case that the unauthorized use of a stamped printed signature constitutes a forgery. So too here the notation “verbally authorized by your depositor” which can constitute a signature under the UCC, when unauthorized, constitutes a forged signature.
Accordingly, the pre-authorized checks herein should be treated as any other check which contains a forged signature. These pre-authorized checks constitute negotiable instruments.
Articles 3 and 4 of the UCC were enacted to provide speed, uniformity and predictability in the transfer and negotiation in the interbank deposit and collection process. Article 3 provides the framework for assigning liability by placing risk of loss for forgery on the party best able to prevent it.
The pre-authorized checks herein should be treated like any other check, to insure that they pass through the system with speed, and to insure that the parties and entities who deal with this type of draft, as it passes through the system, know their rights, responsibilities and liability as to these items, so that they can take steps to avoid loss.
In this case, it is Interbank, the drawee and payor bank, who is in the best position to prevent the loss due to forgery. Although the pre-authorized check does not contain the actual handwritten signature of the drawer or maker, Interbank, which has a business relationship with the drawer, is in the best position to determine whether the pre-authorized check was actually authorized by its customer. Fleet, as a collecting and depository bank, which had no relationship with Tasoulis, is not in the best position to determine whether Tasoulis actually authorized the issuance of the check.
In addition, as pointed out above in the Official Comment to the UCC, it is desirable to end the transaction at the point of payment instead of reopening a series of earlier commercial transactions at a later date when the forgery is discovered.
Furthermore, the Court notes that the treatise, 1 Brady, Bank Checks (§ 28.04, at 28.14 [2000 update]) indicates that “pre-authorized drafts” or “telechecks” are treated as ordinary checks with respect to risk of loss under the UCC. A drawee bank which pays out on a “pre-authorized check” which has *25 not been authorized by its customer cannot recover the payment from a collecting bank in accordance with the final payment rules of the UCC.
Interbank claims that the two pre-authorized checks deposited by Bell in its account at Fleet listed the same account number, but listed different makers. One listed Edward Ness as the maker, and the second listed Valerie Booth as the maker. Interbank claims that this put Fleet on notice that there was something wrong with the checks.
First, Fleet could have only discovered this if it compared the two checks. Interbank does not cite any section of the UCC which would require a depository bank to compare different checks against each other that are being deposited in the bank in an attempt to discover a possible forgery. Given the volume of the checks going through the system, this would be an impossible task which would fly in the face of the purpose of the UCC, to have a speedy commercially sound method for commercial paper to pass through the banking system.
Second, in accordance with UCC 4-207 (1) (b) (iii), a collecting bank warrants on presentment that it has no knowledge that the drawer’s signature is unauthorized. (Manufacturers & Traders Trust Co. v County Trust Region, 59 AD2d 645 [4th Dept 1977].)
“Knowledge” under the UCC means “actual knowledge.” The fact that there may have been facts in existence that should have put Fleet on alert as to possible problems does not constitute knowledge. (Chemical Bank v Haskell, 51 NY2d 85 [1980].)
There is no evidence presented herein that Fleet had knowledge that the checks were unauthorized. The checks were deposited by Bell, a reputable corporation.
Furthermore, Interbank, citing Home Ins. Co. v Manufacturers Hanover Trust Co. (203 AD2d 125 [1st Dept 1994]), claims that accepting a check for deposit without an endorsement is commercially unreasonable. However, this case is not analogous to the above-cited case. The subject checks are not lacking a signature. The checks contain the notation “verbally authorized by your depositor,” which qualifies as a signature.
Finally, Interbank argues that Fleet has not shown that Bell had the proper authorization from its customer on file to issue the checks as required by the Telemarketing and Consumer Fraud Prevention Act.
Any failure on the part of Bell to have the proper authorization on file would only go to the issue of whether Bell is liable *26 to Interbank, but would not affect Fleet’s status as a holder in due course.
Accordingly, defendant Fleet’s motion for summary judgment is granted and the complaint is dismissed against it.
[Portions of opinion omitted for purposes of publication.]

 Plaintiff Interbank’s counsel, by affidavit dated February 27, 2001, advised the Court that it had been determined that defendant Fleet only processed the two Bell drafts and that Mellon Bank processed the two drafts from Sprint. Accordingly, a supplemental complaint was being filed and the claim against defendant Fleet had been reduced to $1,709.04.
In accordance with CPLR 3025 (a), a party may amend its pleading once without leave of the court within 20 days after service of a pleading responding to it. Once that period has passed, a party may only amend its pleading with leave of the court or by stipulation in accordance with CPLR 3025 (b).
Since defendant Fleet served an answer on September 27, 2000, plaintiff Interbank could only serve an amended summons and complaint in February 2001, either with leave of the Court or by stipulation. The Court file does not indicate that plaintiff Interbank obtained leave of the Court or entered into a stipulation with defendant Fleet. However, since no party has objected to the service of the amended summons and complaint, the Court will not intercede.